**William T. COLEMAN, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**Docket No. 01–2263.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 12, 2002.

Decided: May 7, 2003.

Devin McLaughlin, Langrock Sperry and Wool, Middlebury, VT (Peter F. Langrock, of counsel), for Petitioner–Appellant.

David V. Kirby, United States Attorney for the District of Vermont, Burlington, VT, for Respondent–Appellee.

Before: WALKER, Chief Judge, SACK, and B.D. PARKER, Circuit Judges.

Judge B.D. PARKER, JR., concurs in the judgment in a separate opinion.

SACK, Circuit Judge.

Petitioner–Appellant William Coleman appeals from a judgment of the United States District Court for the District of Vermont (William K. Sessions III, *Judge* ) denying Coleman's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. He raises two questions: (1) whether *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applies retroactively to initial section 2255 motions for habeas relief; and if so, (2) whether Coleman's sentence violated *Apprendi* insofar as it was a mandatory minimum sen-

tence that exceeded the range prescribed by the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), that was based upon a factual finding made by a judge, rather than a jury, and was based upon the preponderance-of-the-evidence standard of proof, rather than the beyond-a-reasonable-doubt standard. We conclude that *Apprendi* does not apply retroactively to initial section 2255 motions for habeas relief. We therefore affirm the district court's judgment without reaching the merits of Coleman's *Apprendi* claim.

## BACKGROUND

On March 14, 1996, Coleman was indicted by a grand jury for possession of cocaine base ("crack") with intent to distribute in violation of 21 U.S.C. § 841 and conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846. On April 4, 1996, in a four-count superseding indictment, the grand jury charged Coleman with: (1) two counts of possession of cocaine base with intent to distribute; (2) one count of conspiracy to distribute cocaine base; and (3) one count of traveling in interstate commerce to promote unlawful activity in violation of 18 U.S.C. § 1952(a)(3). Neither indictment specified the quantity of cocaine base underlying the section 841 possession charges.

At the time Coleman was indicted, he had three prior felony drug convictions. During plea negotiations, the government asserted that Coleman was guilty of possessing more than 50 grams of cocaine base. In light of his prior convictions, if a jury had found him guilty of the section 841 possession charges, and a judge had found that he possessed more than 50 grams of cocaine base, then Coleman would have received a term of life imprisonment under the mandatory sentencing provisions of 21 U.S.C. § 841(b)(1)(A).

To avoid this fate, on August 5, 1996, Coleman entered into a plea agreement with the government in which he agreed to plead guilty to one count of possession with intent to distribute cocaine base and the government agreed (1) to dismiss the remaining counts; (2) to recommend that Coleman receive a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1; and (3) to include only one prior felony drug conviction in the information filed in the district court pursuant to 21 U.S.C. § 851(a)(1). On August 12, 1996, Coleman pleaded guilty in accordance with this agreement.

During the sentencing proceedings that followed, the quantity of cocaine base was the principal issue contested by the parties. The government contended that Coleman had possessed 53.1 grams of cocaine base. Coleman argued that under the Guidelines and 21 U.S.C. § 841, the term "cocaine base" did not include the weight of residual water in the substance that he possessed, so that he actually had possessed less than 50 grams of cocaine base.

The controversy over the quantity of drugs had serious consequences. If the district court adopted the government's position, then Coleman would fall within the terms of 21 U.S.C. § 841(b)(1)(A), which required a mandatory minimum term of 20 years' imprisonment. If the court agreed with Coleman, then Coleman would fall within the terms of 21 U.S.C. § 841(b)(1)(B), which required a mandatory minimum term of 10 years' imprisonment.

The district court ultimately found that the government had established, by a preponderance of the evidence, that Coleman had possessed with intent to distribute 50 grams or more of cocaine base. Applying the relevant Guidelines provisions, the

court determined that (1) Coleman's base offense level was 32, *see* U.S.S.G. § 2D1.1; (2) Coleman had earned a three-level downward adjustment by accepting responsibility for his offense, *see id.* § 3E1.1; and (3) Coleman had 12 criminal history points, or a criminal history category of V, *see id.* § 5G1.1(c).

Under the Guidelines, these calculations would normally have yielded a sentencing range between 140 and 175 months' imprisonment. But 21 U.S.C. § 841(b)(1)(A) requires the court to impose a mandatory minimum term of 20 years' (240 months') imprisonment upon any defendant who possesses "50 grams or more of a mixture or substance . . . which contains cocaine base . . . [and] commits such a violation after a prior conviction for a felony drug offense." The district court therefore sentenced Coleman to the minimum term of 20 years' imprisonment, 10 years' supervised release, and a $50 special assessment.

In his direct appeal, Coleman argued, *inter alia,* that the district court improperly included the weight of residual water in the drug quantity calculation. On January 21, 1999, we affirmed the district court's judgment, holding that "the residual water contained in Coleman's crack cocaine was part of a useable and saleable narcotic mixture," and was therefore properly included in the drug quantity calculation. *United States v. Coleman,* 166 F.3d 428, 432 (2d Cir.1999) (per curiam). On May 24, 1999, the United States Supreme Court denied Coleman's petition for a writ of certiorari. *Coleman v. United States,* 526 U.S. 1138, 119 S.Ct. 1794, 143 L.Ed.2d 1021 (1999).

More than one year later, on June 26, 2000, the Supreme Court decided *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. Coincidentally, two days later, Coleman filed a section 2255 motion in which he argued that he had received ineffective assistance of counsel and had entered an involuntary guilty plea, but did not raise the *Apprendi* issue. On September 11, 2000, however, he amended his motion, adding the claim that his sentence violated *Apprendi.* He contended that under *Apprendi,* the quantity of drugs should have been specified in the indictment, submitted to a jury, and proven beyond a reasonable doubt.

On February 7, 2001, Magistrate Judge Jerome J. Niedermeir issued a report and recommendation in which he advised the district court to deny Coleman's section 2255 motion in all respects. The magistrate judge found that Coleman's conviction had become final on May 24, 1999, and that his section 2255 motion was not filed until June 21, 2000. Applying the one-year statute of limitations under section 2255, adopted as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), the magistrate judge concluded that Coleman's involuntary plea and ineffective assistance claims were time-barred.

The magistrate judge noted, however, that AEDPA contains special provisions for section 2255 motions that are based upon new constitutional rules, so that if *Apprendi* applied retroactively to Coleman's motion, then Coleman's *Apprendi* claim would not be time-barred. *See* 28 U.S.C. § 2255, para. 6(3). Assuming *arguendo* that *Apprendi* applied retroactively to Coleman's section 2255 motion, the magistrate judge concluded that Coleman's *Apprendi* claim lacked merit. According

to the magistrate judge, *Apprendi*'s principles applied only to sentences that exceed the relevant statutory maximums, not sentences that increased the relevant statutory minimums.[1] The district court adopted the magistrate judge's report and recommendation *in toto* and issued a certificate of appealability on all issues.

In this appeal, Coleman has abandoned his involuntary-plea and ineffective-assistance claims. He argues only that *Apprendi* applies retroactively to his section 2255 motion and that his sentence—a mandatory minimum sentence that exceeded the relevant Guidelines range but did not exceed the statutory maximum—violated *Apprendi.*

## DISCUSSION

### I. Standard of Review

■ We review *de novo* the district court's denial of a petition for a writ of habeas corpus. *Pratt v. Greiner,* 306 F.3d 1190, 1196 (2d Cir.2002).

### II. Retroactivity

■ This is the first motion that Coleman has filed under 28 U.S.C. § 2255.[2] It is therefore governed by the following time limitations:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the late[r] of—

> (1) the date on which the judgment of conviction becomes final; [or]
>
> . . . .
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . .

28 U.S.C. § 2255, para. 6.

■ On May 24, 1999, when the United States Supreme Court denied Coleman's petition for a writ of certiorari, *Coleman v. United States,* 526 U.S. 1138, 119 S.Ct. 1794, 143 L.Ed.2d 1021 (1999), Coleman's conviction became final. *See Clay v. United States,* 537 U.S. 522, 123 S.Ct. 1072, 1073, 155 L.Ed.2d 88 (2003) (stating that for the purposes of 28 U.S.C. § 2255, a conviction becomes "final" when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires"). Coleman brought his section 2255 motion on June 28, 2000, almost thirteen months after his judgment of conviction became final. It would therefore be barred if the

---

**1.** In a supplemental brief, Coleman observes that the magistrate judge's *Apprendi* analysis was overruled by *United States v. Guevara,* 277 F.3d 111 (2d Cir.2001) (holding that *Apprendi* applies to mandatory minimum sentences that exceeded the range prescribed by the Guidelines) ("*Guevara I* "). *But see Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 2420, 153 L.Ed.2d 524 (2002) (holding that *Apprendi* does not apply to *all* mandatory minimum sentences); *United States v. Guevara,* 298 F.3d 124 (2d Cir.2002) (vacating *Guevara I* on "plain error" grounds, in light of *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1786, 152 L.Ed.2d 860 (2002)), *cert. denied,* —— U.S. ——, 123 S.Ct. 1613,

155 L.Ed.2d 337 (2003); *United States v. Luciano,* 311 F.3d 146, 154 & n. 2 (2d Cir.2002) (holding that *Apprendi* does *not* apply to mandatory minimum sentences beyond the range prescribed by the Guidelines). As we explain below, however, we need not and do not reach the merits of this argument.

**2.** For the purposes of 28 U.S.C. § 2255, para. 8, Coleman's amended motion is an "initial"—rather than a "second" or "successive"—motion. *See Littlejohn v. Artuz,* 271 F.3d 360, 362 (2d Cir.2001) ("[M]otions to amend a habeas petition should not be construed as second· or successive petitions.").

first time-limitation set forth in section 2255 applied. *See* 28 U.S.C. § 2255, para. 6(1).

■ But the Supreme Court decided *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), on June 26, 2000, and Coleman first raised his *Apprendi* claim on September 11, 2000, when he amended his initial section 2255 motion. This claim, which was brought less than one year after *Apprendi* was decided, may therefore be timely under the third time-limitation set forth in section 2255 if *Apprendi* (1) announced a "new" rule of law that (2) applies retroactively on habeas review. *See* 28 U.S.C. 2255, para. 6(3). To date, at least seven United States Courts of Appeals have held that *Apprendi* announced a new rule, but that *Apprendi*'s new rule does not apply retroactively to initial section 2255 motions for habeas relief. *See Goode v. United States,* 305 F.3d 378, 382–85 (6th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 711, 154 L.Ed.2d 647 (2002); *Curtis v. United States,* 294 F.3d 841, 843–44 (7th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 451, 154 L.Ed.2d 334 (2002); *United States v. Mora,* 293 F.3d 1213, 1218–19 (10th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 388, 154 L.Ed.2d 315 (2002); *United States v. Sanchez–Cervantes,* 282 F.3d 664, 666–71 (9th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 48, 154 L.Ed.2d 243 (2002); *McCoy v. United States,* 266 F.3d 1245, 1255–58 (11th Cir.2001), *cert. denied,* 536 U.S. 906, 122 S.Ct. 2362, 153 L.Ed.2d 183 (2002); *United States v. Moss,* 252 F.3d 993, 997–1001 (8th Cir.2001), *cert. denied,* 534 U.S. 1097, 122 S.Ct. 848, 151 L.Ed.2d 725 (2002); *United States v. Sanders,* 247 F.3d 139, 147–51 (4th Cir.), *cert. denied,* 534

U.S. 1032, 122 S.Ct. 573, 151 L.Ed.2d 445 (2001). No Circuit has held otherwise. We now join this chorus and hold that *Apprendi* is a new rule that does not apply retroactively to initial section 2255 motions for habeas relief. We therefore affirm the judgment of the district court without reaching the merits of Coleman's *Apprendi* claim.

### A. *Apprendi* Announced a "New" Rule of Law

■ Under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion),[3] "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government," *id.* at 301, 109 S.Ct. 1060, or "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final," *id.* (emphasis in original). In *Stringer v. Black,* 503 U.S. 222, 228, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), the Court extended *Teague*'s definition of a "new rule" to include "the application of an old rule in a manner that was not dictated by precedent," or, as we more recently stated, "novel applications of old rules," *United States v. Mandanici,* 205 F.3d 519, 527 (2d Cir.), *cert. denied,* 531 U.S. 879, 121 S.Ct. 190, 148 L.Ed.2d 132 (2000).

Prior to *Apprendi,* every federal circuit to consider the question had held that in section 841 prosecutions, such as the prosecution in the case at bar, the quantity of drugs was a "sentencing factor," which prosecutors were not required to charge in the indictment, submit to the jury, or prove beyond a reasonable doubt. *See United States v. Thomas,* 204 F.3d 381, 383 (2d Cir.2000) (per curiam) (*Thomas I*)

---

**3.** Although there was no majority opinion in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Court has since treated Justice O'Connor's plurality opinion

as setting forth the holding of the Court. *See, e.g., Tyler v. Cain,* 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001).

(collecting cases), *vacated and remanded in light of Apprendi*, 531 U.S. 1062, 121 S.Ct. 749, 148 L.Ed.2d 653 (2001). Since *Apprendi*, every federal circuit to consider the question has reversed course, holding that in such prosecutions the quantity of drugs must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. *See United States v. Thomas*, 274 F.3d 655, 663 (2d Cir.2001) (in banc) (*Thomas II* ) (collecting cases).

In light of the dramatic changes wrought by *Apprendi*, it unquestionably announced a new rule of law. *See Moss*, 252 F.3d at 997 ("*Apprendi* is obviously a 'new rule' "); *Jones v. Smith*, 231 F.3d 1227, 1236 (9th Cir.2000) ("*Apprendi* certainly established a new rule"); *McCoy*, 266 F.3d at 1256 ("*Apprendi* established a new rule"); *see also Forbes v. United States*, 262 F.3d 143, 145 (2d Cir.2001) (assuming that *Apprendi* announced a new rule); *Goode*, 305 F.3d at 382–85 (same); *Mora*, 293 F.3d at 1218–19 (same); *Sanders*, 247 F.3d at 147–51 (same). We must therefore consider whether *Apprendi*'s new rule applies retroactively on habeas review.

## B. *Apprendi Announced a "Procedural" Rule*

■ In *Santana–Madera v. United States*, 260 F.3d 133 (2d Cir.2001), *cert. denied*, 534 U.S. 1083, 122 S.Ct. 817, 151 L.Ed.2d 701 (2002), we explained that "[w]hether or not a new rule of law announced by the Supreme Court is to be applied retroactively in criminal cases on *habeas* review ... depends largely on whether the rule is substantive or proce-

dural." *Id.* at 138. New substantive rules are applied retroactively on habeas review, but, with two narrow exceptions, new procedural rules are not.[4] *Compare Bousley v. United States*, 523 U.S. 614, 619–21, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (holding that new substantive rules apply retroactively on habeas review), *and Davis v. United States*, 417 U.S. 333, 346–47, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (same), *with Teague*, 489 U.S. at 310–12, 109 S.Ct. 1060 (holding that new procedural rules do not apply retroactively on habeas review unless they fall within one of two exceptions); *see also Mandanici*, 205 F.3d at 525 ("While a new rule of constitutional criminal procedure generally does not apply retroactively on collateral review, a new rule of substantive criminal law is presumptively retroactive ...."） (citing *Bilzerian v. United States*, 127 F.3d 237, 242 (2d Cir.1997), *cert. denied*, 527 U.S. 1021, 119 S.Ct. 2365, 144 L.Ed.2d 770 (1999)). Thus, to determine whether *Apprendi* applies retroactively to Coleman's section 2255 motion, we must first determine whether *Apprendi* announced a "substantive" or "procedural" rule.

In *Bousley*, the Supreme Court explained the significance of the "distinction between substance and procedure ... in the habeas context." 523 U.S. at 620, 118 S.Ct. 1604. When the Court announces a new *substantive* rule, it normally decides that a "federal criminal statute does not reach [i.e., prohibit] certain conduct." *Bousley*, 523 U.S. at 620, 118 S.Ct. 1604. Because such decisions change the definition of what constitutes a "crime," they

---

**4.** The two exceptions, discussed at some length in Section II.C., below, are:

(1) new rules that "place an entire category of primary conduct beyond the reach of the criminal law, or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense"; or (2) "new watershed rules of criminal procedure that are necessary to the fundamental fairness of the criminal proceeding."

*Mandanici*, 205 F.3d at 525 (quoting *Sawyer v. Smith*, 497 U.S. 227, 241–42, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)).

84

"necessarily carry a significant risk that a defendant stands convicted of 'an act that the law [no longer] make[s] criminal.'" *Id.* (quoting *Davis,* 417 U.S. at 346, 94 S.Ct. 2298). To mitigate this risk, new substantive rules are applied retroactively on habeas review. *Id.* at 619–21, 118 S.Ct. 1604.

When the Court announces a new *procedural* rule, by contrast, it recognizes a constitutional right that typically applies to all crimes irrespective of the underlying conduct, and to all defendants irrespective of their innocence or guilt. Of course, such decisions may alter significant aspects of criminal proceedings, but they rarely influence "the accurate determination of innocence or guilt." *Teague,* 489 U.S. at 313, 109 S.Ct. 1060. In most instances, then, "there is no reason to apply [a procedural] rule retroactively on habeas review." *Bousley,* 523 U.S. at 620, 118 S.Ct. 1604. Accordingly, new procedural rules are not applied retroactively on habeas review unless they fall within one of the two narrow exceptions articulated in *Teague,* as noted above. *See Teague,* 489 U.S. at 310–16, 109 S.Ct. 1060; *accord Sawyer v. Smith,* 497 U.S. 227, 241–42, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).

In *Apprendi,* the Court clearly indicated that it was announcing a procedural rule. At the outset of the opinion, the Court defined the dispute between the State and the defendant in procedural terms: "The substantive basis for New Jersey's enhancement is ... not at issue; the adequacy of New Jersey's procedure is." *Apprendi,* 530 U.S. at 475, 120 S.Ct. 2348; *accord McCoy,* 266 F.3d at 1257 n. 16; *Sanders,* 247 F.3d at 147. Then, when the

Court articulated the holding of *Apprendi,* it again spoke in procedural terms:

> Other than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum *must be submitted to the jury, and proved beyond a reasonable doubt.*

*Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added).[5]

This language strongly suggests that *Apprendi* announced a procedural rule. The holding of *Apprendi* dictates only who must decide certain factual disputes and under what standard of proof they must be decided. It does not determine which facts are "elements" of a crime nor refer to any substantive norms. It concerns the Sixth and Fourteenth Amendments and two procedural rules that these amendments require. It does not concern the scope of the criminal statutes, the relationship between the defendant's conduct and the severity of punishment, nor anything else of substantive import.

As the Seventh Circuit explained, "*Apprendi* is about nothing but procedure—who decides a given question (judge versus jury) and under what standard (preponderance versus reasonable doubt)." *Curtis,* 294 F.3d at 843. In other contexts, we too have held that the two aspects of *Apprendi*'s new rule—the shift from judge to jury and from preponderance-of-the-evidence to beyond-a-reasonable-doubt—are "procedural" changes that do not apply retroactively on habeas review. *See Bilzerian,* 127 F.3d at 240–41 (holding that the shift from judge to jury on the "materiality" issue in perjury prosecutions, which

5. In subsequent cases, the Court has twice cited this statement as the holding of *Apprendi.* *See, e.g., Cotton,* 122 S.Ct. at 1783; *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 2410, 153 L.Ed.2d 524 (2002). It has also read *Apprendi* to require that, "[i]n federal prosecutions, such facts must ... be charged in the indictment." *Cotton,* 122 S.Ct. at 1783 (citing *Apprendi,* 530 U.S. at 476, 120 S.Ct. 2348 and *Jones v. United States,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)).

was required by *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), is a procedural rule that does not apply retroactively on habeas review); *Mandanici,* 205 F.3d at 527–31 (holding that the shift from preponderance-of-the-evidence to beyond-a-reasonable-doubt on the "materiality" issue in perjury prosecutions, which was required by *Gaudin* and *United States v. Ali,* 68 F.3d 1468, 1474–75 (2d Cir.1995), *modified,* 86 F.3d 275 (2d Cir.1996), is a procedural rule that does not apply retroactively on habeas review).

Coleman argues to the contrary that *Apprendi* announced a substantive rule because it transformed the quantity of drugs from a "sentencing factor," which could be found by the judge and proved by a preponderance of the evidence, into an "element" of the offense, which must be submitted to the jury and proved beyond a reasonable doubt. In his view, *Apprendi* thereby added a new "element"—drug quantity—to the various drug offenses prescribed by 21 U.S.C. § 841, making a "substantive" change in the statute, which therefore applies retroactively on habeas review. Coleman contends that because *Apprendi*'s rule was not applied in the course of his sentencing proceedings, he was not properly proved "guilty" of possessing more than 50 grams of cocaine base, and thus was not properly sentenced under the mandatory enhancements of section 841(b)(1)(A). *See, e.g., United States v. Clark,* 260 F.3d 382, 385–88 (5th Cir. 2001) (Parker, J., dissenting) (arguing that *Apprendi* renders some defendants "actually innocent" of possessing the drug quan-

tities required by § 841(b), and thus announced a "substantive" rule).

Coleman draws support for his argument from various remarks in Apprendi, *Thomas II,* and *Santana–Madera.* In *Apprendi,* the Court repeatedly referred to the distinction between "sentencing factors" and "elements of the offense," describing two ways in which courts treat factual issues in criminal proceedings.[6] In a footnote, for example, the *Apprendi* Court noted that when a fact increases the defendant's punishment beyond the statutory maximum, that fact is best characterized not as a "sentencing factor," but as "the functional equivalent of an element of a greater offense." *Id.* at 494 n. 19, 120 S.Ct. 2348. "Indeed," the Court explained, such a fact "fits squarely within the usual definition of an 'element' of the offense." *Id.*

In *Thomas II,* we used the term "element" in a similar way, to describe *Apprendi*'s effect on drug prosecutions under 21 U.S.C. § 841:

> We conclude, following *Apprendi*'s teachings, that if the type and quantity of drugs involved in a charged crime may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs, then *the type and quantity of drugs is an element of the offense* that must be charged in the indictment and submitted to the jury.

*Thomas II,* 274 F.3d at 660 (emphasis added and footnote omitted). "[P]ursuant to the Supreme Court's instructions in *Apprendi*," we explained,

**6.** *See, e.g., Apprendi,* 530 U.S. at 478, 483 n. 10, 485, 488–89 n. 14, 492, 494 & n. 19, 495, 120 S.Ct. 2348; *see also id.* at 477, 485 n. 12, 486, 493–94 & n. 18, 497, 120 S.Ct. 2348 (discussing the historical treatment of "elements" of felony offenses); *id.* at 499–501, 120 S.Ct. 2348 (Thomas, J., concurring)

("This case turns on the seemingly simple question of what constitutes a 'crime' ... that is, which facts are the 'elements' or 'ingredients' of a crime.... [A] 'crime' includes every fact that is by law a basis for imposing or increasing punishment .... The aggravating fact is an element of the aggravated crime.").

because the quantity of drugs involved in a crime may raise a defendant's sentence above the statutory maximum established in 21 U.S.C. § 841(b)(1)(C), *quantity is an element of the offense* charged under 21 U.S.C. § 841.

*Id.* at 663 (emphasis added).[7]

And in *Santana–Madera,* we indicated that when a Supreme Court decision "interpret[s] a federal criminal statute, and, in doing so, change[s] the elements of the ... offense," *Santana–Madera,* 260 F.3d at 139, it thereby "alter[s] the meaning of the substantive criminal law," *id.,* and thus applies retroactively to initial section 2255 motions for habeas relief, *id.*

But there is a clear distinction between the meaning of the term "element" as used in *Apprendi* and *Thomas II,* on the one hand, and as used in *Santana–Madera,* on the other. In *Santana–Madera,* the term "element" was used to signify a substantive change in the scope of a statute and a consequent change in the relationship between the conduct prohibited and the punishment prescribed. In *Apprendi* and *Thomas II,* the term "element" was used

simply as shorthand for a set of procedural requirements.[8] Thus, in *Thomas II,* when we said that drug quantity was an "element" in section 841 prosecutions, we meant only that it must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. We did not, of course, indicate that *Apprendi* legalized the possession of an undetermined quantity of cocaine base. *See* 21 U.S.C. § 841(b)(1)(C) (providing for sentences based upon indeterminate quantities of cocaine base); *United States v. Outen,* 286 F.3d 622, 636 (2d Cir.2002) (rejecting facial challenge to section 841 because, *inter alia,* defendant could be indicted, convicted, and sentenced under section 841(b)(1)(C) for the possession of an indeterminate quantity of drugs). Nor did we suggest that *Apprendi* changed the relationship between different quantities of cocaine base and terms of imprisonment under section 841. Both before and after *Apprendi,* section 841 has prohibited the possession with intent to distribute cocaine base, and imposed longer terms of imprisonment for the possession of greater quantities of it.[9]

---

7. Other circuits have made similar remarks, saying that after *Apprendi,* "drug quantity is an *element* of the offense," *United States v. Fields,* 242 F.3d 393, 395 (D.C.Cir.) (emphasis altered), *clarified on reh'g,* 251 F.3d 1041, 1043 (D.C.Cir.2001), or that after *Apprendi,* section 841 sets forth "three different crimes, with three differing *elements* (weight of drugs), and with three substantially different penalty structures," *United States v. Flowal,* 234 F.3d 932, 938 (6th Cir.2000).

8. In the words of the Seventh Circuit:

What *Apprendi* held—and ... *all* that *Apprendi* holds—is that the Due Process Clause requires the trier of fact to apply the reasonable-doubt standard. *Apprendi* does not rewrite or change the elements of any federal offense; it does, however, determine who must make particular decisions, and what the burden of persuasion must be.

*Apprendi* strongly affects how § 841 is implemented .... This is what other panels of our courts have meant in referring to drug type and quantity loosely as elements: this word conveys the thought that drug type and quantity must be marked as a subject for the trier of fact under a reasonable-doubt standard. But this is a far cry from saying—which none of our opinions has done—that without an allegation of drug type and quantity in the indictment, there is *no offense at all.* That's what real "element" status means, and that status is one that we have repeatedly rejected .... [D]rug type and quantity is not an "element" of the § 841 offense in the strong sense.

*United States v. Bjorkman,* 270 F.3d 482, 491–92 (7th Cir.2001), *cert. denied,* 535 U.S. 1095, 122 S.Ct. 2290, 152 L.Ed.2d 1049 (2002) (emphasis in original, internal quotation marks and citations omitted).

In this respect, *Apprendi* is different from those decisions that we have held to be substantive and therefore retroactive on habeas review.

In *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court read the phrase "uses ... a firearm" in 18 U.S.C. § 924(c)(1) to require that the Government show "active employment of the firearm." *Id.* at 144, 116 S.Ct. 501. In *United States v. Munoz*, 143 F.3d 632 (2d Cir.1998), we applied *Bailey* retroactively on habeas review because there was a significant risk that defendants had been convicted under section 924(c)(1) without having "actively employed" a firearm, as *Bailey* required. *See Munoz*, 143 F.3d at 635 n. 3; *see also Bousley*, 523 U.S. at 619–21, 118 S.Ct. 1604 (same).

In *United States v. Ali*, 68 F.3d 1468 (2d Cir.1995), *modified*, 86 F.3d 275 (2d Cir. 1996), we held that "materiality" was an element of a perjury offense under 18 U.S.C. § 1001(a)(2). *Id.* at 1474–75. In *Bilzerian*, we applied *Ali* retroactively on habeas review because there was a significant risk that defendants had been convicted under section 1001(a)(2) without having made a "material" false statement, as *Ali* required. *See Bilzerian*, 127 F.3d at 241–42.

And in *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), the Supreme Court held that the phrase "continuing series of violations" in 21 U.S.C. § 848 did not refer to a single element of a "continuing criminal enterprise" offense (i.e., a "series"), but rather to several discrete elements (i.e., "violations") that must be independently proved by the government and unanimously agreed upon by the jury. *See id.* at 824, 119 S.Ct. 1707. In *Santana–Madera*, we applied *Richardson* retroactively on habeas review because there was a significant risk that defendants had been convicted under section 848 without having engaged in several discrete "violations," as *Richardson* required. *See Santana–Madera*, 260 F.3d at 138–39.

The rule announced in *Apprendi*, by contrast, did not effect a change in the meaning of a federal criminal statute. Since the enactment of section 841 in 1970, Pub.L. No. 91–513, § 401, 84 Stat. 1242, 1260–62 (1970), drug quantity has been an "element" of a section 841 offense—i.e., it has been something that the government must prove to obtain a conviction under section 841(a) with a mandatory minimum sentence under section 841(b)(1)(A) or (B). After *Apprendi*, the government must prove the same factors, but it must now prove those facts to a jury beyond a reasonable doubt. The substance of the crime remains the same; only the trier of fact and the standard of proof have changed.

Because Coleman raises only *Apprendi* claims, he argues only that the quantity of drugs should have been decided by the jury and proved beyond a reasonable doubt. Because such claims are procedur-

9. As the Sixth Circuit explained,
   > *Apprendi* does not alter which facts have what legal significance, let alone suggest that conspiring to distribute marijuana is no longer a federal crime unless the jury finds that some particular quantity has been sold.... Because *Apprendi* is concerned with the identity of the decision-maker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful, it identifies a new rule of criminal procedure ... to which the *Teague* standard applies.
   
   *Curtis*, 294 F.3d at 843; *cf., McCoy*, 266 F.3d at 1256–57 ("*Apprendi* did not decriminalize any class of conduct or prohibit a certain category of punishment for a class of defendants"); *Sanchez–Cervantes*, 282 F.3d at 668 (same).

al, and seek retroactive relief, they are not normally cognizable on habeas review. *See Teague,* 489 U.S. at 310–16, 109 S.Ct. 1060.

### C. Neither of Teague's Exceptions Applies to Apprendi

There are "two narrow exceptions" to *Teague's* general bar against retroactive habeas relief for procedural errors. *Saffle v. Parks,* 494 U.S. 484, 486, 494–95, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *see also Teague,* 489 U.S. at 311, 109 S.Ct. 1060.

> Under *Teague,* new rules of constitutional criminal procedure do not apply retroactively on collateral review unless they fall into either of two categories: (1) new rules that "place an entire category of primary conduct beyond the reach of the criminal law, or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense"; or (2) "new watershed rules of criminal procedure that are necessary to the fundamental fairness of the criminal proceeding."

*Mandanici,* 205 F.3d at 525 (quoting *Sawyer,* 497 U.S. at 241–42, 110 S.Ct. 2822).

Coleman rightly concedes that the first exception does not apply to *Apprendi. Apprendi* did not alter the relationship between the quantity of cocaine base and the severity of punishment under section 841. It therefore plainly did not "prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense," *id.* at 241, 110 S.Ct. 2822, let alone "place an entire category of primary conduct beyond the reach of criminal law," *Mandanici,* 205 F.3d at 525 (internal quotation marks omitted); *see also Goode,* 305 F.3d at 383–84 n. 8 (holding that *Teague's* first exception does not apply to *Apprendi's* new rule); *Sanchez–*

*Cervantes,* 282 F.3d at 668 (same); *McCoy,* 266 F.3d at 1256–57 (same); *Jones,* 231 F.3d at 1237 (same); *Sanders,* 247 F.3d at 148 (same); *Mora,* 293 F.3d at 1218 (same).

Coleman does contend, however, that *Apprendi* announced a "watershed" rule that falls within *Teague's* second exception, and thus applies retroactively on habeas review. He argues principally that it is the second aspect of *Apprendi's* new rule—the beyond-a-reasonable-doubt standard—that qualifies as a "watershed" rule because it promotes the objectives of "accuracy" and "fairness" in sentencing proceedings.

■ We disagree. In order to be "watershed" under *Teague's* second exception, a rule must not only "improv[e] the accuracy" of criminal proceedings, *Sawyer,* 497 U.S. at 242, 110 S.Ct. 2822, but also "alter our understanding of the bedrock procedural elements essential to the fairness" of those proceedings, *id.* at 241, 110 S.Ct. 2822; *accord Mandanici,* 205 F.3d at 528. "In short, it must be a 'groundbreaking occurrence.'" *Mandanici,* 205 F.3d at 528 (quoting *Caspari v. Bohlen,* 510 U.S. 383, 396, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994)).

The Supreme Court "has emphasized, through words and example[s], that the exception is exceedingly narrow, applying 'only to a small core of rules requiring the observance of those procedures that ... are implicit in the concept of ordered liberty.'" *Id.* (quoting *Graham v. Collins,* 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993)) (ellipsis in original). To underscore the rarity of "watershed" rules, the Supreme Court has repeatedly invoked the sweeping rule of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that indigent defendants have the right to court-appointed counsel in all criminal prosecutions), as a quintes-

sential watershed rule, *see Mandanici*, 205 F.3d at 528–29 (citing *O'Dell v. Netherland*, 521 U.S. 151, 167, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997); *Saffle*, 494 U.S. at 495, 110 S.Ct. 1257; *Gray v. Netherland*, 518 U.S. 152, 170, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996)), and has repeatedly remarked that it seems "unlikely that many such components of basic due process have yet to emerge," *see Mandanici*, 205 F.3d at 529 (citing *Teague*, 489 U.S. at 313, 109 S.Ct. 1060; *Graham*, 506 U.S. at 478, 113 S.Ct. 892; *Sawyer*, 497 U.S. at 243, 110 S.Ct. 2822; *Butler v. McKellar*, 494 U.S. 407, 416, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990)). Indeed, since 1989, "[b]eginning with the rule at issue in *Teague*, the Court has measured at least eleven new rules, or proposed new rules, of criminal procedure against the criteria for the second exception and, in every case, has refused to apply the rule at issue retroactively" on habeas review. *Mandanici*, 205 F.3d at 529 (collecting cases).

■ Clearly, then, *Apprendi* did not announce a "watershed" rule. *See Goode*, 305 F.3d at 384–85 (holding that *Teague*'s second exception does not apply to *Apprendi*'s new rule); *accord Curtis*, 294 F.3d at 843–44; *Mora*, 293 F.3d at 1218–19; *Sanchez–Cervantes*, 282 F.3d at 668–71; *McCoy*, 266 F.3d at 1257–58; *Moss*, 252 F.3d at 998–1001; *Sanders*, 247 F.3d at 149–51; *Jones*, 231 F.3d at 1237–38. Unlike *Gideon*, Apprendi did not cut a new rule from whole cloth. It merely "clarified and extended" the scope of two well-settled principles of criminal procedure: the defendant's right to a jury trial and the government's burden of proof beyond a

reasonable doubt. *Mora*, 293 F.3d at 1219.

■ Before *Apprendi*, it had been clear for over a century that these jury and proof requirements applied to " 'every fact necessary to constitute the crime with which [the defendant] is charged.' " *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *accord Davis v. United States*, 160 U.S. 469, 493, 16 S.Ct. 353, 40 L.Ed. 499 (1895). In *Apprendi*, these two principles were extended to facts that are not formally defined as "elements" by criminal statutes, but are nonetheless "the functional equivalent of . . . element[s]," *Apprendi*, 530 U.S. at 494 n. 18, 120 S.Ct. 2348, because they "increase[ ] the penalty for a crime beyond the prescribed statutory maximum," *id.* at 490, 120 S.Ct. 2348.[10] Although *Apprendi* altered certain aspects of indictments, trials, and sentencing proceedings, it did not "alter our understanding of the bedrock procedural elements essential to the fairness of criminal proceedings" at all. *See Sawyer*, 497 U.S. at 241, 110 S.Ct. 2822.

This conclusion is buttressed, finally, by a series of cases in which we have held that *Apprendi* violations are not "structural" errors that merit automatic reversal in most situations. *See, e.g., United States v. Friedman*, 300 F.3d 111, 127–28 (2d Cir. 2002) (holding that *Apprendi* error was "harmless"), *cert. denied*, —— U.S. ——, 123 S.Ct. 1785, 155 L.Ed.2d 672 (2003); *Outen*, 286 F.3d at 639–40 (holding that *Apprendi* error did not affect the defendant's "substantial rights"); *see also United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 1786, 152 L.Ed.2d 860 (2002) (holding

---

**10.** ·This does not detract from our conclusion that *Apprendi* announced a "new" rule. As the Supreme Court has explained, *Teague* applies not only to "new rules," but also to "the application of an old rule in a manner that was not dictated by precedent." *See Stringer*, 503 U.S. at 228, 112 S.Ct. 1130; *accord Mandanici*, 205 F.3d at 527. *But see Clark*, 260 F.3d at 386 (Parker, J., dissenting) (arguing that *Apprendi* should apply retroactively on habeas review because, *inter alia*, "the procedural aspect of the decision is not new").

that *Apprendi* error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings"); *cf. Neder v. United States,* 527 U.S. 1, 17, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding omission of "materiality" element from jury instructions was harmless); *Johnson v. United States,* 520 U.S. 461, 469–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (holding that omission of "materiality" element from indictment did not "seriously affect the fairness, integrity or public reputation of judicial proceedings") (internal quotation marks omitted). As several other circuits have observed, it would be anomalous to say, on the one hand, that *Apprendi* errors are not "structural"—i.e., that they do not inherently deprive defendants of "basic protections," *Neder,* 527 U.S. at 8–9, 119 S.Ct. 1827, or "substantial rights," *Outen,* 286 F.3d at 639–40—and then to say, on the other hand, that *Apprendi* announced a "watershed" rule of criminal procedure. *See Sanchez–Cervantes,* 282 F.3d at 670; *Sanders,* 247 F.3d at 150–51; *accord Goode,* 305 F.3d at 385; *Curtis,* 294 F.3d at 843–44; *Mora,* 293 F.3d at 1219; *Moss,* 252 F.3d at 1000–01.

## CONCLUSION

Because we conclude that *Apprendi* announced a rule that is both "new" and "procedural," but not "watershed," we conclude that *Apprendi* does not apply retroactively to initial section 2255 motions for habeas relief. We therefore affirm the judgment of the district court without reaching the merits of Coleman's *Apprendi* claim.

B.D. PARKER, JR., Circuit Judge, concurring in the judgment.

Because the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), caused a substantive change in the law, I believe it must be applied retroactively on collateral review. Because I also believe that Coleman's sentence did not violate *Apprendi,* I agree with the majority's ultimate conclusion that the judgment below should be affirmed. I write separately to explain my views on the retroactivity of *Apprendi.*

At the outset I note that, regardless of whether *Apprendi* applies retroactively, Coleman cannot benefit. Based on the sentencing court's finding, by a preponderance of the evidence, that his crime involved 52.9 grams of cocaine base, the court sentenced him principally to twenty years' imprisonment, the mandatory minimum sentence under § 841(b)(1)(A) (in light of his prior felony drug convictions). In the absence of a finding on drug quantity, his statutory maximum sentence would have been thirty years' imprisonment, under § 841(b)(1)(C). Because Coleman's sentence does not exceed the otherwise applicable statutory maximum, the sentence does not violate *Apprendi. See United States v. Luciano,* 311 F.3d 146, 150 (2d Cir.2002) ("The touchstone of the constitutional inquiry under *Apprendi* is whether the sentence actually imposed, on the basis of drug quantity not found by the jury, exceeds the statutory maximum that would have applied in the absence of such a finding."); *see also Thomas II,* 274 F.3d at 664 ("The constitutional rule of *Apprendi* does not apply where the sentence imposed is not greater than the prescribed statutory maximum for the offense of conviction."). While the court's finding on drug quantity subjected Coleman to the possibility of a sentence in excess of the otherwise applicable statutory maximum, and while Coleman's sentence exceeds the Guidelines range that would have applied in the absence of a finding on drug quantity, these facts are irrelevant to an *Apprendi* analysis. *See Luciano,* 311 F.3d at 150–53.

Turning to retroactivity, we must first identify *Apprendi*'s new rule, and then determine if it is procedural or substantive. I agree with the majority's conclusion that *Apprendi* announced a new rule. According to the majority, the "dramatic changes wrought by *Apprendi*" resulted from its holding that:

Other than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum *must be submitted to the jury, and proved beyond a reasonable doubt.*

(Majority Op., *supra,* at 84 (citing *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348).) The procedural aspect of this rule—that every element of a crime must be submitted to the jury and proved beyond a reasonable doubt—obviously did not originate with *Apprendi,* as it has been imbedded in American constitutional law for more than two hundred years. *See Apprendi,* 530 U.S. at 477–78, 120 S.Ct. 2348. *Apprendi*'s innovation was not in identifying the procedures that apply to an element of a crime but, rather, in redefining what constitutes an element of a crime. After *Apprendi,* an element is any fact (other than the fact of a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum. *See United States v. Clark,* 260 F.3d 382, 386 (5th Cir.2001) (Parker, J., dissenting).

Unlike the majority, I believe that *Apprendi*'s new rule is substantive, not procedural, and therefore presumptively ap-plicable retroactively on collateral review.[1] For purposes of retroactivity analysis, a substantive change is one that alters the meaning of a criminal statute. *Bousley v. United States,* 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The addition of an element naturally alters the meaning of a criminal statute. Thus, in *Santana–Madera v. United States,* 260 F.3d 133 (2d Cir.2001), we held:

By deciding that the jury had to agree unanimously on each of the offenses comprising the 'continuing series' in a CCE count, *Richardson* interpreted a federal criminal statute and, in doing so, *changed the elements* of the CCE offense. In other words, it altered the meaning of the substantive criminal law.

*Id.* at 139 (emphasis added).

This conclusion is buttressed by our decision in *United States v. Thomas,* 274 F.3d 655 (2d Cir.2001) (en banc). Prior to *Apprendi,* we had held that drug quantity was not an element of a § 841 offense but was merely a sentencing factor that could be found by a judge by a preponderance of the evidence. *See United States v. Monk,* 15 F.3d 25, 27 (2d Cir.1994); *United States v. Campuzano,* 905 F.2d 677, 679 (2d Cir. 1990). *Thomas,* however, established that *Apprendi* made drug quantity "an element of the offense charged under 21 U.S.C. § 841." *Thomas II,* 274 F.3d at 663. By adding an element to a § 841 offense, *Apprendi* effected a change in the criminal

---

**1.** While the majority cites a "chorus" of other circuits that have held *Apprendi* not to apply retroactively on collateral review, most of the cited cases simply assumed that the new rule announced in *Apprendi* was procedural, and proceeded to analyze the retroactivity question under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Goode v. United States,* 305 F.3d 378 (6th Cir.2002); *United States v. Mora,* 293 F.3d 1213 (10th Cir.2002); *United States v. San-chez–Cervantes,* 282 F.3d 664 (9th Cir.2002); *McCoy v. United States,* 266 F.3d 1245 (11th Cir.2001); *United States v. Moss,* 252 F.3d 993 (8th Cir.2001); *but see Curtis v. United States,* 294 F.3d 841, 843 (7th Cir.2002) (concluding that rule established in *Apprendi* is procedural); *United States v. Sanders,* 247 F.3d 139, 147 (4th Cir.2001) (same). (Majority Op., *supra,* at 81–82.) Thus, these opinions are of little help in our determination of whether the new rule announced in *Apprendi* is substantive or procedural.

law that *Santana–Madera* compels us to denominate as substantive.

The majority nonetheless insists that *Apprendi* "does not determine which facts are 'elements' of a crime." (Majority Op., *supra*, at 84–85.) Faced with our holding in *Thomas* that *Apprendi* effectively added an element—drug quantity—to § 841, the majority draws a distinction between the use of the term "element" in *Apprendi* and *Thomas,* on the one hand, and its use in retroactivity cases such as *Santana–Madera,* on the other. (Majority Op., *supra*, at 86–87.) "Element," the argument goes, means either a "substantive" change in the scope of a statute, and a consequent change in the relationship between the conduct prohibited and the punishment prescribed, or else it is merely a "shorthand" for a set of procedural requirements.

This distinction is, I respectfully suggest, a factitious one. The majority observes that *Thomas* held "only that [drug quantity] must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt." (Majority Op., *supra*, at 84–86.) That holding, I submit, is the very definition of what is required of every element of every criminal offense. An element of a criminal offense is no more and no less than a fact that must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. The Supreme Court acknowledged as much in *Apprendi* itself. *See Apprendi*, 530 U.S. at 494 n. 19, 120 S.Ct. 2348 (stating that a fact that increases a sentence beyond the statutory maximum "fits squarely within the usual definition of an 'element' of the offense"); *see also id.* at 502, 120 S.Ct. 2348 (Thomas, J., concurring) ("[A] fact that is by law the basis for imposing or increasing punishment is an element."). This constellation of precedent can not fairly be read to

mean that drug weight is anything other than an element under § 841.

According to the majority, substantive rules apply retroactively because by changing the definition of what constitutes a crime, they necessarily carry a significant risk that a defendant stands convicted of an act that the law no longer makes criminal, while procedural rules, in contrast, rarely influence the accurate determination of innocence or guilt. (Majority Op., *supra*, at 87–88). While *Apprendi* obviously did not legalize the possession of an undetermined quantity of cocaine base (*see* Majority Op., *supra*, at 87–88), however, that fact hardly renders *Apprendi*'s holding procedural. The relevant question is whether *Apprendi* changed the elements of a § 841 offense, and there is no question that it did. While the possession of an undetermined quantity of cocaine base is still a crime, it is, after *Apprendi,* a different crime from the possession of a determined quantity—e.g., fifty grams—of cocaine base. That is a substantive change in § 841. Significantly, in discussing the difference between a "sentencing factor" and an "element" of an offense, the Supreme Court stated in *Apprendi* that "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348 (emphasis added). *See also id.* at 501, 120 S.Ct. 2348 (Thomas, J., concurring) ("[I]f the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact—of whatever sort, including the fact of a prior conviction— the core crime and the aggravating fact together constitute an aggravated crime ...."); *United States v. Strayhorn,* 250 F.3d 462, 468 (6th Cir.2001) (stating that

"each penalty provision of § 841(b) constitutes a different crime with different elements, including drug weight"). The *Apprendi* Court clearly understood that its new rule "changed the elements" of criminal offenses, thereby effecting a substantive change in the law. *See Santana–Madera,* 260 F.3d at 139; *see also Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348 (noting that "the effect of New Jersey's sentencing 'enhancement' here is unquestionably to turn a second-degree offense into a first degree offense").[2]

While it is undoubtedly true, as the majority points out, that failing to apply *Apprendi* retroactively does not create the possibility that a person might have been convicted on the basis of conduct that is not illegal, it does create the similarly troubling possibility that a defendant has been convicted of conduct that constitutes a less serious offense than the one for which he is sentenced. For example, a defendant may be guilty of possessing an unspecified amount of a substance containing cocaine base (under § 841(b)(1)(C)), yet innocent of possessing fifty grams or more of a substance containing cocaine base (under § 841(b)(1)(A)). That was precisely the controversy that was played out here: Coleman admitted to the possession of cocaine base, but hotly contested whether the amount was more or less than fifty grams. The court's finding (by a mere preponderance) that he possessed

52.9 grams made the question, to say the least, a close one. The 2.9 grams in controversy meant all the difference in the world to Coleman because ten additional years of incarceration turned on that finding.

I readily concede that a failure to apply *Apprendi* retroactively does not create the possibility that Coleman was convicted for conduct that is not illegal. But that cannot be the dispositive test unless *Bousley, Thomas,* and *Santana–Madera* were all wrongly decided. The failure to apply *Apprendi* retroactively does create the possibility that Coleman was convicted by a judge for a different, and more serious, crime than he committed and that he will spend an additional ten years incarcerated as the result of a critical fact not charged in an indictment, found by a jury, or established beyond a reasonable doubt. I see no tenable distinction between these two types of errors.

Consequently, I would hold that *Apprendi* announced a new substantive rule that applies retroactively on collateral review, and I would affirm the District Court's denial of Coleman's habeas petition because Coleman cannot show that his sentence violated *Apprendi.*

**2.** In concluding that "the [*Apprendi*] Court clearly indicated that it was announcing a procedural rule," the majority misinterprets the Court's comment that "[t]he substantive basis for New Jersey's enhancement is . . . not at issue; the adequacy of New Jersey's procedure is." (Majority Op., *supra,* at 84 (citing *Apprendi,* 530 U.S. at 475, 120 S.Ct. 2348).) It is clear from the context of the *Apprendi* opinion that the Supreme Court was saying only that, while the petitioner had challenged "the constitutionality of basing an enhanced sentence on racial bias . . . in the New Jersey

courts," he did not raise that issue in the Supreme Court. *Apprendi,* 530 U.S. at 475, 120 S.Ct. 2348. While it is undisputed that *Apprendi* involved a challenge to the constitutionality of New Jersey's procedure, Coleman argues, and I agree, that the Supreme Court's ruling nonetheless had a substantive effect on § 841. *See McCoy v. United States,* 266 F.3d 1245, 1272 & n. 21 (11th Cir.2001) (Barkett, J., concurring in result) ("The fact that the Court rejected New Jersey's *procedure* does not mean that *Apprendi* does not have a substantive *effect* on § 841 cases.").