**Leonardo R. SANTANA–MADERA,
Petitioner–Appellant,**

v.

**UNITED STATES of America,
Respondent–Appellee.**

**Docket No. 99–2125.**

United States Court of Appeals,
Second Circuit.

Argued May 4, 2001.

Decided Aug. 3, 2001.

Jeremy G. Epstein, Shearman & Sterling, New York, NY, (Karen S. Hart and Olav A. Haazen, on the brief) for Petitioner–Appellant.

Elizabeth S. Riker, Assistant United States Attorney, for Daniel J. French, United States Attorney for the Northern District of New York (John G. Duncan, on the brief), for Respondent–Appellee.

Before: McLAUGHLIN, POOLER, Circuit Judges, and MARTIN, District Judge.*

McLAUGHLIN, Circuit Judge:

In this case, a convicted drug dealer invokes two recent Supreme Court decisions, *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)—both of which were decided long after his convictions became final—in the hope of reversing his conviction for engaging in a continuing criminal enterprise ("CCE") and reducing his sentence of 324 months' imprisonment. Even though we conclude that the new rule announced in *Richardson* has retroactive application to the Petitioner's case, it is, nevertheless, an inadequate basis for upsetting his CCE conviction. And because the CCE conviction thus stands, whether or not *Apprendi* is to be retroactively applied (an issue we leave for another day) we conclude that there was no *Apprendi* error in the district court's sentence in the instant case.

In September 1992, an indictment filed in the United States District Court for the Northern District of New York (McCurn, J.) charged Petitioner, Leonardo Santana–Madera, with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; eight substantive counts of cocaine distribution in violation of 21 U.S.C. § 841(a); and engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C.

* The Honorable John S. Martin, Jr., United States District Judge for the Southern District of New York, sitting by designation.

§ 848. The government alleged that, from January 1986 to June 1992, Santana–Madera masterminded a huge cocaine distribution pipeline between New York City and Syracuse, New York.

Consistent with the traditional practice before *Apprendi*, the indictment did not allege the quantity of cocaine involved either for the individual distribution counts or the aggregate amount of the CCE. Furthermore, like nearly all pre-*Richardson* CCE indictments, Santana–Madera's indictment did not specify which offenses constituted the "continuing series of violations." The CCE count simply alleged that Santana–Madera organized or managed at least five other persons in connection with three or more of the nine federal drug law violations alleged in the indictment.

Having pled not guilty to all charges, Santana–Madera came to trial in 1993. In its jury charge, the district court issued the following instruction on the "continuing series of violations" element of the CCE offense:

> A continuing series of violations is three or more violations of the Federal Drug Laws committed over a definite period of time. These violations do not have to be convictions or separate counts in the indictment. They may be acts not mentioned in the indictment at all, as long as the Defendant had the intent to violate the drug laws when he or she committed these acts.

Thus, the jury was not required to agree unanimously on which specific violations constituted the "continuing series." Under this instruction, if the jury unanimously agreed that Santana–Madera supervised five or more people in the commission of three or more violations of the federal

drug laws—even if each juror had a different set of three violations in mind—the jury could convict Santana–Madera of the CCE charge. Santana–Madera's counsel did not object to this instruction or request other instructions.

The jury convicted Santana–Madera on all charges. At sentencing, the district court concluded that Santana–Madera's participation in the conspiracy involved at least 50, but less than 150, kilograms of cocaine. This finding (along with others not here relevant) yielded a sentencing range, under the Sentencing Guidelines, of 324 to 405 months' imprisonment. Before continuing with the background of this case, we need to make a brief digression to discuss the sentence imposed by the district court.

It is perfectly clear that the district court sentenced Santana–Madera to 324 months' imprisonment, but the internal architecture of the sentence is not so clear. The written judgment of the district court stated, "324 months, consisting of 324 months on Counts 4, 10 [cocaine distribution counts] & 11 [CCE count] and 240 months on *each of* [emphasis added] Counts 2, 3, 5, 6, 8, & 9 [cocaine distribution counts], all to be served concurrently."[1]

The use of the words "each of" with respect to counts 2, 3, 5, 6, 8 and 9, and the absence of that phrase in connection with counts 4, 10 and 11, suggests that the district court merged the two distribution offenses (counts 4 and 10) within the CCE count (count 11) and issued a single sentence of 324 months on the merged CCE offense. This is peculiar because the Sentencing Guidelines make no provision for such a merger of offenses. Rather, the

---

1. The district court determined that the conspiracy charge, for sentencing purposes, was a lesser included offense of the CCE count and subsumed that count within the CCE count.

Guidelines for sentencing on multiple counts of conviction require a sentencing court to impose a separate sentence on each count of conviction. U.S.S.G. § 5G1.2 (1993). In a case such as this, a sentencing court is instructed to impose the total punishment level on the count carrying the highest statutory maximum, and *then* impose concurrent sentences on the remaining counts. U.S.S.G. § 5G1.2(c) (1993).

Although we would ordinarily be inclined to believe that the district court followed the Sentencing Guidelines, those closest to this case—the Petitioner and the government—agree that the district court did not impose concurrent sentences of 324 months on counts 4 and 10. The government states that all eight of Santana–Madera's cocaine distribution offenses fell under the rubric of 21 U.S.C. § 841(b)(1)(C), and each carries a maximum sentence of 20 years. Therefore, the district court could have imposed only a sentence of 240 months on counts 4 and 10, just as it did with the six other cocaine distribution counts.

For his part, Petitioner agrees that the district court "did not sentence [him] for the § 848 [the CCE offense] conviction separately, but instead lumped Counts 4 and 10 (possession with intent to distribute) and 11(CCE) together." The parties thus agree that the district court merged Counts 4 and 10 into the CCE count, and neither has argued, on direct appeal or in this *habeas* proceeding, that such a merger was improper. In any event, 324 months was an appropriate sentence on the CCE count. So, while we cannot help but wonder why the district court elected to sentence Santana Madera in this manner, we have no more cause to discuss it here.

After sentencing, Santana–Madera appealed and this Court affirmed. *United States v. Santana–Madera,* 47 F.3d 1157 (2d Cir.1995) (table). Santana–Madera did not contest the CCE jury instruction in that appeal. In July 1998, Santana–Madera returned to the district court (McCurn, *J.*) to file a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255. The district court denied the petition in January 1999, finding that it was time-barred and, in any event, that Petitioner's claims were not cognizable because the claims had either been raised and rejected on direct appeal, or lacked any showing of cause for the omission or resulting prejudice.

█ Petitioner filed a notice of appeal, which this Court construed as a motion for a certificate of appealability ("COA"). While that COA motion was pending, the Supreme Court decided *Richardson,* which interpreted the CCE statute. *Richardson* held that § 848's phrase "continuing series of violations" did not refer to a single element of the CCE offense, but rather to several elements. 526 U.S. at 818–19, 119 S.Ct. 1707. Therefore, in a CCE case, the jury must unanimously and separately agree on each of the violations that constitute a "continuing series of violations" required for a CCE conviction. *Id.* at 824, 119 S.Ct. 1707. Petitioner promptly amended his motion for a COA, raising the *Richardson* issue.

In May 2000, this Court granted a COA on the following issues: "(1) whether the decision in *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), should be applied retroactively; (2) if so, whether trial counsel is ineffective for failing to request the jury instructions required by *Richardson* where the direct appeal was decided prior to the *Richardson* decision; and (3) if so, whether harmless error analysis is applicable such that *habeas* relief is not appropriate."

█ In June 2000, the Supreme Court decided *Apprendi,* further complicating

matters. *Apprendi* held that any fact other than a prior conviction that increases a defendant's sentence beyond the otherwise applicable maximum penalty must be decided by a jury beyond a reasonable doubt. 530 U.S. at 490, 120 S.Ct. 2348. Petitioner again moved to amend his COA to allow him to raise *Apprendi* issues. This Court granted that motion in March 2001, allowing Petitioner to raise the issues: (1) whether *Apprendi* applies retroactively; and (2) if so, whether there was an *Apprendi* error in this case.

## DISCUSSION

■ We review a district court's denial of a *habeas* petition *de novo*. *Farrington v. Senkowski*, 214 F.3d 237, 240 (2d Cir. 2000). Having reviewed all of the questions certified for appeal, we now affirm the judgment of the district court.

I. *Retroactivity of Richardson*

■ Whether or not a new rule of law announced by the Supreme Court is to be applied retroactively in criminal cases on *habeas* review for the first time [2] depends largely on whether the rule is substantive or procedural. It is axiomatic that, with limited exceptions "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). However, the *Teague* bar to retroactivity applies only to new procedural rules; new rules of substantive criminal law are presumptively retroactive. *United States v. Mandanici*, 205 F.3d 519,

525 (2d Cir.2000). The Supreme Court has instructed that new rules are substantive when they alter "the meaning of a criminal statute enacted by Congress" such that the defendant stands convicted for conduct that may no longer be illegal. *Bousley v. United States*, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *accord Bilzerian v. United States*, 127 F.3d 237, 242 (2d Cir.1997).

Unquestionably, *Richardson* created a new rule. A case announces a new rule "when it breaks new ground or imposes a new obligation on the States or the Federal Government" or "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. 1060 (emphasis omitted). *Richardson's* recent holding that a jury must unanimously agree on the actions that comprise the "continuing series of violations" was not dictated by precedent by the time Santana–Madera's conviction became final in 1995. But is the new rule substantive or procedural?

■ Neither the Supreme Court nor this Court has yet ruled on the question. However, nearly every court to confront it has concluded that the *Richardson* rule is substantive and, therefore, *Teague* analysis is inapplicable. *United States v. Lopez*, 248 F.3d 427, 432 (5th Cir.2001) ("We find, however, that *Teague* is inapplicable, because *Richardson* consisted of the Supreme Court's interpretation of a statute and is therefore retroactively available on collateral review."); *Lanier v. United States*, 220 F.3d 833, 838 (7th Cir.2000); *Murr v. United States*, 200 F.3d 895, 906

---

**2.** The Supreme Court recently held in *Tyler v. Cain*, —— U.S. ——, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001), that, in the context of *second or successive habeas* petitions, 28 U.S.C. § 2244(b)(2)(A) mandates that only the Supreme Court, through a specific holding

that a new rule is retroactive, can give a new rule retroactive applicability. *Tyler* does not alter the analysis of this case because this is Petitioner's first *habeas* petition and § 2244(b) governs only successive *habeas* petitions.

(6th Cir.2000); *Monsanto v. United States,* 143 F.Supp.2d 273, 279 (S.D.N.Y.2001); *Benevento v. United States,* 81 F.Supp.2d 490, 493 (S.D.N.Y.2000). *But see Rice v. United States,* 118 F.Supp.2d 451, 452 (S.D.N.Y.2000) ("*Richardson* merely affects the procedure under which juries review the 'continuing series' element of the CCE statute.").

We · conclude, agreeing with our sister circuits, that the *Richardson* rule is substantive, and therefore should be applied retroactively in a defendant's first federal *habeas* proceeding. In *Richardson,* the Supreme Court framed its task as follows: "In this case, we must decide whether the statute's phrase 'series of violations' refers to one element, namely a 'series,' in respect to which the 'violations' constitute the underlying brute facts or means, or whether those words create several elements, namely the several 'violations,' in respect to *each* of which the jury must agree unanimously and separately." *Richardson,* 526 U.S. at 817–18, 119 S.Ct. 1707 (emphasis in original). By deciding that the jury had to agree unanimously on each of the offenses comprising the "continuing series" in a CCE count, *Richardson* interpreted a federal criminal statute and, in doing so, changed the elements of the CCE offense. In other words, it altered the meaning of the substantive criminal law. *Bousley,* 523 U.S. at 620, 118 S.Ct. 1604.

II. *Applicability of Harmless Error Review*

Of course, a holding that *Richardson* applies retroactively to Petitioner's case does not alone suffice to vacate his CCE conviction. We must next consider whether the district court's instructional error was of sufficient magnitude to justify issuance of the writ without regard to preju-

dice, or whether it may be subjected to a harmless error review.

■ There is a limited class of errors—so called "structural errors"—that are so serious as to defy harmless error analysis. *Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. 1246. Errors meeting these criteria are *per se* prejudicial and require that the underlying conviction be vacated. *Neder v. United States,* 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

Petitioner argues that the district court's failure to instruct the jury to agree separately on each of the offenses that comprised the "continuing series" amounts to a structural error. However, the weight of authority is to the contrary.

■ An erroneous instruction that omits an element of an offense is generally subject to harmless error analysis. *Id.* at 9, 119 S.Ct. 1827. In *Neder,* the Supreme Court held that omitting an essential element from a jury charge "differs markedly from the constitutional violations we have found to defy harmless-error review." *Id.* at 8, 119 S.Ct. 1827. Such omissions "do[ ] not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9, 119 S.Ct. 1827 (emphasis in original). Furthermore, our sister circuits have, thus far, unanimously held that harmless error review applies to *Richardson* errors. *Lanier,* 220 F.3d at 838–39; *United States v. Brown,* 202 F.3d 691, 699 (4th Cir.2000); *United States v. Escobar-de Jesus,* 187 F.3d 148, 161–62 (1st Cir.1999). We agree that *Richardson* errors are not structural and are subject to harmless error review. But there is also a disagreement between

the parties over the appropriate standard of harmlessness.

## III. *Harmless Error Analysis*

■ Generally, when evaluating presumptively correct convictions on collateral *habeas* review, the harmless error inquiry for errors of a constitutional dimension is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The government argues that the instructional error in this case should be evaluated under the *Brecht* standard. Petitioner, on the other hand, argues that the rationale animating the stringent *Brecht* standard—the government's legitimate interest in the finality of convictions that have survived direct review—is undermined when no court has previously adjudicated the harmlessness of the error (presumably on direct appeal in state courts). He urges us to consider his claim under the somewhat more relaxed standard from *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under that inquiry, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. 824.

■ Neither the Supreme Court nor this Court has definitively established the proper harmless error standard to apply when a constitutional error is being evaluated for the first time on collateral review. And other courts addressing this issue are not in complete agreement. *Compare Bains v. Cambra,* 204 F.3d 964, 976–77 (9th Cir.2000) (*Brecht* applies regardless of whether the error was ever evaluated under *Chapman* ) *with Orndorff v. Lockhart,* 998 F.2d 1426, 1429–30 (8th Cir.1993) (*Chapman* applies when no court has previously evaluated the harmlessness of the error). However, this case does not require us to settle the question. We conclude that, under either standard, the *Richardson* error of which Petitioner complains was clearly harmless.

The *Richardson* error occurred when the district court failed to require the jury to specifically and separately agree on each of the three violations that comprised the "continuing series of violations" required for a CCE conviction.[3] However, in addition to the CCE count, the jury also convicted Santana–Madera of no less than eight substantive counts of cocaine distribution and a single count of conspiracy to distribute cocaine. Thus, the jury unanimously agreed on at least nine major violations of the federal drug laws, any three of which are sufficient to establish the "continuing series of violations" under *Richardson* and § 848. *See Brown,* 202 F.3d

---

**3.** Santana–Madera argues that *Richardson* requires not only that a jury unanimously agree on three predicate violations, but also that it find that each predicate violation was undertaken in concert with five or more other persons. *Richardson,* however, imposed no such requirement. In fact, the *Richardson* majority specifically rejected this argument. *Richardson,* 526 U.S. at 823, 119 S.Ct. 1707 ("To the extent the dissent suggests that [the element of the involvement of five or more people] must be satisfied with respect to *each* underlying crime, it is clearly wrong.").

This disposes of Petitioner's argument, relying on *United States v. Tran,* 234 F.3d 798 (2d Cir.2000), (belatedly made in his reply brief) that the CCE count of his indictment failed to charge an offense. The indictment alleged that Santana–Madera supervised five or more people in the commission of three or more of the nine violations of the drug laws listed in the indictment. The indictment thus alleged all the elements of the CCE offense, 21 U.S.C. § 848, even after *Richardson.*

at 699; *Escobar-de Jesus*, 187 F.3d at 162; *United States v. Long*, 190 F.3d at 476 n. 3 (6th Cir.1999). So, if the district court were clairvoyant and had given the jury the instruction required by *Richardson*, it is beyond cavil that the jurors would have unanimously agreed on three predicate violations of the drug laws. They unanimously agreed on nine such violations. The error here—even under the *Chapman* standard—is clearly harmless.[4]

## IV. *Apprendi Issues*

Petitioner has a second set of arguments, based on *Apprendi*, that the sentence imposed by the district court is infirm. *Apprendi*, it will be recalled, held that, any fact, except a prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. To date, the Supreme Court has not offered any guidance on whether *Apprendi* has retroactive application to cases on collateral review. And this Court has not yet ventured where the Supreme Court has thus far feared to tread. Fortunately, we can resolve this case without blazing new trails, because our recent precedents conclusively demonstrate that there simply was no *Apprendi* error in Petitioner's sentence.

As we discussed above, Petitioner was sentenced to 324 months' imprisonment on the CCE count (with two substantive cocaine distribution counts merged within it), and to 240 months' imprisonment on each of the remaining six distribution counts, with all sentences to be served concurrent-

ly. Petitioner argues that, under *Apprendi*, the district court's findings as to the quantity of cocaine involved and other facts that increased the sentencing range required by the Guidelines had to be submitted to the jury and proved beyond a reasonable doubt.

■ Petitioner's invocation of *Apprendi* is unavailing. This Court has held that "*Apprendi* is inapplicable to Guidelines calculations that do not result in a sentence on a single count above the statutory maximum for that count." *United States v. McLeod*, 251 F.3d 78, 82 (2d Cir.2001); *accord United States v. Garcia*, 240 F.3d 180, 183 (2d Cir.2001) (*Apprendi* does not alter "a sentencing judge's traditional authority to determine those facts relevant to selection of an appropriate sentence within the statutory maximum"). The CCE statute provides for a maximum sentence of life imprisonment. 21 U.S.C. § 848(a). Because Petitioner's sentence of 324 months is less than life, there is no *Apprendi* error in the sentence on this count. To be sure, the district court's findings increased the sentence required by the Guidelines, but the *Apprendi* rule is implicated only when such facts increase the *statutory* maximum sentence. *McLeod*, 251 F.3d at 82.

The concurrent sentences of 240 months on each of the six remaining drug distribution counts are similarly unassailable because those sentences did not exceed the statutory maximum term of imprisonment of 20 years provided by § 841(b)(1)(C) for cases involving the distribution of an un-

---

4. Our conclusion that the *Richardson* error was harmless also disposes of Petitioner's argument that the failure of his trial and appellate counsel to raise the *Richardson* error constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Even if the performance of counsel was deficient, Petitioner cannot establish a reasonable probability that, but for his lawyer's failure to request a *Richardson* instruction, the outcome of the proceeding would have been different. *Id.*

specified amount of cocaine.[5] 21 U.S.C § 841(b)(1)(C). Thus, we find no error in Petitioner's sentence.

## CONCLUSION

We have considered all of the parties' remaining contentions and find them to be without merit. For the foregoing reasons, we AFFIRM the decision of the district court.

5. Because Petitioner's eight cocaine distribution convictions all fell under 21 U.S.C. § 841(b)(1)(C), his reply brief argument that the failure to allege drug quantity in the indictment is error under *Tran*, 234 F.3d 798, also fails. Section 841(b)(1)(C) covers distribution of unspecified amounts of cocaine. Thus, allegations of distribution of cocaine or possession with intent to distribute cocaine are sufficient to state a complete offense under that statute.