Peter MONSANTO Petitioner–
Appellant,

v.

U.S.A., Respondent–Appellee.

No. 01–2286.

United States Court of Appeals,
Second Circuit.

Argued: May 29, 2003.

Decided: Oct. 31, 2003.

Colleen P. Cassidy, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, N.Y., for Petitioner–Appellant.

Anirudh Bansal, Assistant United States Attorney, for James B. Comey, United States Attorney for the Southern District of New York (George S. Canellos, Gary Stein, Assistant United States Attorneys, on the brief), New York, N.Y., for Respondent–Appellee.

Before: CALABRESI and SACK,
Circuit Judges, and GARAUFIS, District
Judge.*

CALABRESI, Circuit Judge.

Petitioner–Appellant Peter Monsanto appeals from a decision of the United States District Court for the Southern Dis-

---

* The Honorable Nicholas G. Garaufis, United States District Court for the Eastern District of New York, sitting by designation.

trict of New York (Ward, *J.*) dismissing his petition for a writ of habeas corpus. Appellant contends 1) that the district court was wrong to conclude that an error in the court's jury instruction at Monsanto's trial was harmless, and 2) that Monsanto's conviction for two offenses violates his constitutional right to be free from double jeopardy. We affirm.

## I. Background

Appellant was charged, *inter alia*, with (a) participating in a pattern of racketeering that included eighteen acts (by Monsanto and by others) of murder, conspiracy to murder, and narcotics trafficking (Count I); (b) conspiring to participate in a pattern of racketeering (which included the same eighteen acts articulated in Count I) (Count II); (c) participating in a conspiracy to distribute heroin, in violation of 21 U.S.C. § 846 (Count III); and (d) conducting a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848 (Count IV).[1]

Of the eighteen "acts of racketeering" alleged, three involved violations by Monsanto of federal narcotics laws.[2] In addition, the conspiracy to distribute heroin charged in Count III alleged twenty-five overt acts, thirteen of which involved Monsanto.[3]

At the close of the six-month jury trial, the district court instructed the jury. As to Counts I and II, the court said that, to convict the defendant of violating the RICO statutes, it must find that the defendant committed (or, as to Count II, conspired to commit) at least two racketeering acts. The court correctly told the jury that it would not be sufficient for each of the jurors to find the defendant had committed two of the predicate acts (e.g., with some jurors believing he committed only acts 1 and 2, and others believing he committed only acts 3 and 4); rather, the jurors must unanimously agree that the defendant had committed at least two specific predicate acts.

As to the CCE count, the district court instructed the jury that, to convict Monsanto of operating a continuing criminal enterprise, it must unanimously find "(1) that Monsanto committed one or more violations of the narcotics laws; (2) that the narcotics offenses committed by Monsanto were part of a continuing series of violations of the narcotics laws; (3) that Monsanto undertook to commit this series of violations in concert with five or more persons either named or unnamed in the Indictment; (4) that Monsanto occupied the position of organizer, supervisor, or

---

**1.** There were twenty more counts, some against Monsanto and others against his co-defendants, including allegations of tax evasion, unlawful possession of firearms, and possession of property subject to forfeiture. These are not relevant to this appeal.

**2.** Racketeering Act 5 alleged a conspiracy to distribute heroin—the same conspiracy to distribute heroin that was alleged as Count III of the indictment. Racketeering Act 7 alleged that Monsanto and a co-defendant possessed heroin with intent to distribute in October 1984; and Racketeering Act 8 alleged that Monsanto and the same co-defendant possessed heroin with intent to distribute in July 1985.

**3.** Overt Acts 2, 3, 4, 5, 6, 7, and 12 alleged that, on specific dates, various co-defendants possessed or distributed heroin that they had received from Monsanto. Overt Act 15 alleged Monsanto and a co-defendant possessed heroin in October 1984 (this is the same allegation as Racketeering Act 7), and Overt Act 19 alleged Monsanto and the same co-defendant possessed heroin in July 1985 (this is the same allegation as Racketeering Act 8). Overt Acts 17, 18, 22, and 23 alleged possession of a series of items including firearms, manite wrappers, and a bulletproof vest.

manager with respect to each of these five or more persons; and (5) that Monsanto obtained substantial income or resources from this continuing series of violations." *Monsanto v. United States,* 143 F.Supp.2d 273, 276 (S.D.N.Y.2001). These instructions have not been challenged. The court, however, did not tell the jury that it needed to unanimously agree on which narcotics violations constituted the "series of violations." It also instructed them that, in deciding whether a series of violations had occurred, it could consider both the violations charged in the indictment and acts not charged in the indictment but proven by the government at trial.

The jury convicted defendant on all sixteen counts on which he was charged. In special interrogatories for the substantive RICO count, the jury unanimously found that the government had proven that Monsanto had committed, *inter alia,* Racketeering Act 5 (the conspiracy to distribute heroin) and Racketeering Act 8 (possession of heroin in July 1985). The jury also determined, however, that the government had not proven that Monsanto had committed Racketeering Act 7 (possession of heroin in October 1984). Nevertheless, in special interrogatories for the RICO conspiracy count, the jury unanimously found that the government had proven that Monsanto had *conspired* to commit all three of those Racketeering Acts. In addition, the jury convicted Monsanto of conspiracy to distribute heroin and of conducting a continuing criminal enterprise. But on these two latter counts, there were no special interrogatories. As a result, it was not established by a direct answer whether the jury agreed unanimously that the government had proven any particular set of overt acts with respect to the heroin conspiracy charge, or any specific narcotics trafficking offenses with respect to the CCE count.

Defendant was sentenced to life without parole on the CCE conviction. He was sentenced to two 20–year terms of imprisonment on the RICO counts to run consecutively to one another but concurrently with the life sentence imposed for the CCE violation. The court, relying on the law of this circuit which holds that § 846 drug conspiracy is a lesser included offense to the § 848 CCE offense, imposed no sentence of imprisonment on the heroin conspiracy conviction.

On direct appeal, Defendant argued, *inter alia,* (1) that the indictment was flawed because it failed to charge three eligible CCE predicates; (2) that, in the absence of a special interrogatory and verdict on the CCE predicates, the court could not be certain that the jury unanimously agreed on three specific and eligible predicates, and (3) that the jury charge allowed the jury to convict Defendant on the CCE count even if it found him guilty of the narcotics conspiracy alone. We affirmed, more than ten years ago. *United States v. Simmons,* 923 F.2d 934, 952 (2d Cir.1991).

In 1997, Defendant filed a *pro se* habeas petition pursuant to 28 U.S.C. § 2255, contending, *inter alia,* (1) that his convictions for violating both § 846 (conspiracy) and § 848(CCE) violated his rights under the Double Jeopardy Clause; and (2) that the jury instructions allowed the conviction to rest on legally impermissible factual predicates. While the habeas petition was pending, the Supreme Court issued its decision in *Richardson v. United States,* which held that a jury in a CCE case "must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'" 526 U.S. 813, 815, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). In view of *Richardson,* the district court al-

lowed Monsanto to amend his petition to claim that the district court's jury instruction violated *Richardson.*

In August 1999, the district court rejected Monsanto's double jeopardy claim. *Monsanto v. United States,* 1999 WL 649047 (S.D.N.Y. Aug.25, 1999). The court concluded that, because the court had not imposed a sentence with respect to the § 846 conviction, any error in allowing both convictions to stand was harmless.

In April 2002, the court also denied Monsanto's *Richardson* claim. *Monsanto v. United States,* 143 F.Supp.2d 273 (S.D.N.Y.2001). First, the court held that "*Richardson* announced a new substantive rule of law which applies retroactively" to Monsanto's case. *Id.* at 279. Next, it rejected Monsanto's argument that the error was "structural" and therefore that it required automatic reversal; the court instead held that the error was subject to harmless-error analysis. *Id.* at 279–80. The court then concluded that the harmless-error inquiry articulated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)—under which an error is harmless only if the government can prove "beyond reasonable doubt that the error complained of did not contribute to the verdict obtained"—applied to this case. In so doing, the court rejected the government's argument that it should instead apply the harmless-error test employed in *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (holding that an error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict") (quotation marks and citation omitted). The court concluded that the more deferential *Brecht* test had been intended to apply to habeas cases where a state court had already conducted an analysis under *Chapman,* and so, in a federal case like this where there had never been a

*Chapman* analysis, the more stringent standard was appropriate. *See Monsanto,* 143 F.Supp.2d at 285.

Finally, the district court conducted the *Chapman* analysis pursuant to this Court's articulation—in *United States v. Jackson,* 196 F.3d 383, 386 (2d Cir.1999)—of the Supreme Court's test in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The court reviewed the evidence presented at trial and concluded "beyond a reasonable doubt that a guilty verdict would have been returned on the CCE count absent the *Richardson* error." *Monsanto,* 143 F.Supp.2d at 292. Having found that the jury, properly instructed, would have convicted Monsanto, the court held the *Richardson* error harmless and denied Defendant's habeas petition. This appeal followed.

## II.

### A.

"A continuing criminal enterprise, as proscribed by 21 U.S.C. § 848, is defined in part as 'a continuing series' of felony drug violations of any of the provisions in the subchapters comprising §§ 801–971 of Title 21." *United States v. Flaharty,* 295 F.3d 182, 197 (2d Cir.2002). Like most other circuits, we have defined a "series" to include three or more violations. *See United States v. Young,* 745 F.2d 733, 747 (2d Cir.1984).

In *Richardson,* the Supreme Court held that, in order to convict a defendant of violating § 848, a jury must not only unanimously find that the defendant committed a continuing series of violations, but must also unanimously agree on which specific violations make up the series. *Richardson v. United States,* 526 U.S. at 815, 119 S.Ct. 1707. This is so, the Court reasoned, because the statutory phrase "series of violations" refers not to a single element—

"series"—which has various underlying brute facts, but, rather, refers to several elements—the "violations"—each of whose existence the jury must find separately and unanimously. *Id.* at 817–18, 119 S.Ct. 1707. The Court in *Richardson* vacated the Court of Appeals' decision to the contrary, and remanded the case for further proceedings, expressly "leav[ing] to the Court of Appeals the question whether to engage in harmless-error analysis, and if so, [the determination of] whether the error was harmless in [that] case." *Id.* at 824, 119 S.Ct. 1707.

Following *Richardson,* this court, in *Santana–Madera v. United States,* 260 F.3d 133 (2d Cir.2001), held (1) that *Richardson* announced a new substantive rule of law and therefore should be applied retroactively in habeas proceedings, *id.* at 139; (2) that the error to which *Richardson* applied does not fall into that narrow class of "structural" errors requiring automatic reversal, but was, rather, subject to harmless-error analysis, *id.;* and considered, but did not decide, (3) which type of harmless-error analysis—*Chapman* or *Brecht*—should apply. *Id.* at 140. *Santana–Madera* did not decide that question because we there determined that, under

either test, the *Richardson* error at issue was clearly harmless. *Id.*

Both the Defendant and the government agree, as indeed they must in light of *Santana–Madera,* that the district court in the instant case correctly concluded that the jury instruction violated *Richardson,* and that *Richardson* applies retroactively to Defendant's habeas petition. Defendant contends, however, that the court erred in finding that the *Richardson* error was subject to harmless-error analysis. Defendant's argument on this last point is squarely foreclosed by our decision in *Santana–Madera,* which expressly held that "*Richardson* errors are not structural and are subject to harmless error review." *Santana–Madera,* 260 F.3d at 139.[4] As a result, the only remaining question is whether the district court's harmless-error analysis was correct.

In determining whether the error was harmless "beyond reasonable doubt" the district court relied primarily on two cases: 1) the Supreme Court's decision in *Neder v. United States,* 527 U.S. 1, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), which, like the instant case, involved a trial court that had failed to instruct the jury on a necessary element of one of the offenses

---

4. Defendant argues, citing *United States v. Mollica,* 849 F.2d 723, 729–31 (2d Cir.1988), that the error in this case should not be analyzed for harmless error because the jury instruction invited the jurors to consider alleged violations that were not charged in the indictment, and this, in effect, was a constructive amendment of the indictment, which has been held to be a *per se* violation of the Fifth Amendment. But the same indictment problem existed in *Santana–Madera,* and the court held that harmless-error analysis nevertheless applied. *See Santana–Madera,* 260 F.3d at 136 (jury charge instructed that the predicate violations "may be acts not mentioned in the indictment at all, as long as the Defendant had the intent to violate the drug laws when he or she committed these acts").

In conducting the harmless-error analysis in the instant case, the district court noted that "[i]n light of *Richardson* 's holding that the narcotics violations making up the 'continuing series of violations' are 'elements' of the CCE crime, it is axiomatic that such predicates must be charged in the Indictment," and so determined that "in evaluating whether the jury's verdict would have been the same absent the *Richardson* error, the Court will limit its review of the evidence to the narcotics violations which were charged in the Indictment." *Monsanto,* 143 F.Supp.2d at 287 n. 10. The district court was well advised to limit its consideration to those acts alleged in the indictment because, had it failed to do so, it would have left open the question of whether it had "constructively amended" the indictment.

for which the defendant was on trial; and 2) our decision in *United States v. Jackson*, 196 F.3d 383 (2d Cir.1999), which sought to apply *Neder*.

The Supreme Court held in *Neder* that the omission of an element from the judge's charge to the jury can, in certain circumstances, be harmless error. It stated, for example, that where "a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Id.* at 17, 119 S.Ct. 1827. The Court moreover said that the error would also be harmless in additional situations, for example where other facts necessarily found by the jury were the "functional equivalent" of the omitted element. *Id.* at 13, 119 S.Ct. 1827.

The Court noted, however, that

safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless.

A reviewing court making this harmless-error inquiry does not, as Justice Traynor put it, "become in effect a second jury to determine whether the defendant is guilty." Rather a court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.

*Id.* at 19, 119 S.Ct. 1827 (citation omitted).

Soon after the Supreme Court issued its decision in *Neder*, we decided *United States v. Jackson*. In *Jackson*, the defendant was convicted of extortion, but the district court failed to instruct the jury on the necessary element of "wrongfulness." This allowed the jury to convict on the premise that "every threat to reputation in order to obtain money is inherently wrongful," rather than requiring that the jury find that "the defendant ha[d] no plausible claim of right to the money demanded or [that] there [was] no nexus between the threat and the defendant's claim." *Jackson*, 196 F.3d at 387. We then said that, pursuant to *Neder*, "if the evidence supporting the omitted element was controverted, harmless-error analysis requires the appellate court to conduct a two-part inquiry, searching the record in order to determine (a) whether there was sufficient evidence to permit a jury to find in favor of the defendant on the omitted element, and, if there was, (b) whether the jury would nonetheless have returned the same verdict of guilty." *Jackson*, 196 F.3d at 386.

There is, we believe, some tension between the harmless-error analysis in *Neder* and our articulation of it in *Jackson*. Thus, *Neder* appears to say that, once the court decides that the defendant offered evidence sufficient to support a finding in his or her favor on the omitted element, the court's error in omitting that element from the jury instruction cannot be deemed harmless, unless, for example, other conclusions by the same jury are the functional equivalent of a finding of the omitted element. *Jackson*, on the other hand, seems to allow the court to decide on its own whether the jury would have convicted the defendant, even where the evi-

dence can support a finding in the defendant's favor on an omitted element and no functional equivalent of the omitted element has been found by the jury. This tension has been noted by at least one other circuit court, which has rejected the *Jackson* approach. *See United States v. Brown*, 202 F.3d 691, 701 n. 19 (4th Cir. 2000).

Despite this tension, we—like the district court—are required to follow *Jackson*, as that case constitutes a binding precedent of our court. *See United States v. Moore*, 949 F.2d 68, 71 (2d Cir.1991). We are bound by *Jackson*, that is, unless and until that case is reconsidered by our court sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision. *Id.* Such an in banc rehearing, requested by a panel of our court, would seem particularly appropriate if our circuit's prior holding cannot be reconciled with an earlier, authoritative decision of the Supreme Court. And so it might be in a future case in which *Neder* and *Jackson* would dictate different results.[5]

In the case before us, however, all three members of the panel think that the current conviction must be upheld, albeit on differing grounds.[6] Under the circumstances, a review of *Jackson* in banc does not seem to us appropriate at this time. Accordingly, since *Jackson* remains the law of this circuit, and, since the district court undoubtedly applied the *Jackson* test correctly, we find no reversible error.

**B.**

Monsanto also contends that his convictions under both § 846 and § 848 violate his rights under the Double Jeopardy Clause. He relies on *Rutledge v. United States*, 517 U.S. 292, 300, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), in which the Supreme Court held that a § 846 narcotics conspiracy is a lesser included offense within a CCE § 848 offense. Therefore, *Rutledge* held, the imposition of a special assessment for each of the two convictions amounted to an unconstitutional second punishment. *Id.* at 302–03, 116 S.Ct. 1241.

Monsanto's argument is foreclosed by our decision in *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir.1999). In *Underwood*, we stated that, where the § 836 conviction does not affect the term of imprisonment, the *Rutledge* error is "merely cosmetic" and not prejudicial, and

---

5. On two other occasions in which we conducted this kind of analysis, the requirements of *Neder* were clearly met, and so we were not faced with the question of whether *Neder* and *Jackson* are in tension. *See United States v. Guevara*, 298 F.3d 124, 128 (2d Cir.2002) (finding "insufficient evidence to support a jury finding" in the defendant's favor on the missing element, and therefore holding that, in the absence of the error, the jury would still have returned a verdict against the defendant); *United States v. George*, 266 F.3d 52, 61 (2d Cir.2001) (concluding that the "evidence was sufficient for a rational jury to find that George did not act with the requisite intent," and therefore holding that the error was prejudicial because "we do not possess this degree of certainty [beyond reasonable doubt] that the jury's verdict was not affected by the mistaken instruction").

6. As stated above, the *Neder* test permits a conviction to be upheld if actual findings of the—properly instructed—jury on one count, necessarily mean that the jury would, if correctly instructed, have convicted on another count. One member of the panel—the author of this opinion—believes that the facts before us meet this *Neder* requirement, and hence that the conviction would stand even apart from *Jackson*. Another member of the panel—Judge Sack—disagrees with this reading of the facts. He, however, thinks that the appropriate test for harmless error in the circumstances before us is likely not the *Chapman* test applied by the district court, but the *Brecht* standard urged by the government. Applying that latter test he thinks the conviction must be upheld.

therefore that the claim cannot be raised on habeas review. *Id.* That is the case here: the district court imposed no jail sentence with respect to the § 846 conviction, and hence Monsanto cannot demonstrate the wrong necessary to warrant habeas relief. We note that Monsanto's specific complaint—that the district court hearing his habeas petition should have remanded to the sentencing court so the sentencing court could exercise its discretion to decide which of the two convictions to throw out—rings hollow here, where (1) the same district court judge sentenced the defendant originally and heard the habeas petition, and (2) Monsanto did not object at sentencing or raise this issue on direct appeal.

### III.

As in *Santana–Madera,* we hold 1) that *Richardson* announced a new substantive rule of law, to be applied retroactively in habeas proceedings; and 2) that *Richardson* errors are not "structural," and are therefore subject to harmless-error analysis, *id.* But we also hold 3) that, while *Jackson* may well be in tension with *Neder,* it remains the binding law of this circuit, and under *Jackson* the *Richardson* error at issue in this case was clearly harmless. We further hold that, to the extent the district court made a *Rutledge* error by allowing Monsanto's convictions under both § 846 and § 848 to stand, that error has not in this case caused the kind of prejudice that can be challenged on habeas. Accordingly, we AFFIRM the district court's decisions denying Monsanto's petition for habeas corpus.