**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 5 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JUAN MANUEL CARBAJAL-
MORENO,

    Defendant-Appellant.

No. 01-2360
(D. New Mexico)
(D.C. No. CR-99-777-JC)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Juan Manuel Carbajal-Moreno appeals his convictions for engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848 and conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana in violation of 21 U.S.C. § 846. He first claims his Fifth Amendment right against Double Jeopardy was violated because the district court failed to vacate his conspiracy conviction, which is a lesser included offense of his simultaneous CCE conviction. In his second argument, he challenges his CCE conviction, claiming the evidence was insufficient. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we remand with instructions to vacate the conspiracy conviction and affirm the CCE conviction.

*Background*

This case involves a drug organization that acquired marijuana imported from Mexico, collected and transported it through the southwestern United States and delivered it to Stockton, California. A central figure in this organization was Carbajal-Moreno. The organization would have one or more individuals go to various remote areas of southwest New Mexico, near the United States-Mexico border, to retrieve and load into trucks very large quantities of marijuana (hundreds and thousands of pounds) that had been smuggled from Mexico. Once the marijuana was loaded into the trucks, the individual(s) would take the marijuana to waiting motor homes or various stash houses. At the stash house,

the marijuana would be unloaded into the house, where it was weighed and repackaged. The marijuana would then be loaded into another vehicle, generally a large motor home (RV), and transported to Stockton, California, where it would be offloaded at various locations, including a car repair shop and barn. Upon delivery in Stockton, the RV driver(s) would be paid and the operation would recycle.

Criminal charges against various members of the organization found their genesis in the March 27, 1999 arrest of Glenn Duggins and Justin Comer. On the morning of March 27, 1999, United States Border Patrol Agents were alerted that an electronic motion sensor along the border in southwest New Mexico had been activated. Border Patrol Agent Frank Allen went to the area to investigate and noticed various foot prints and what he believed to be truck tire tracks. He followed the tire tracks to an arroyo where the tracks met up with the tracks of a large dual wheeled truck. He radioed this information to other agents.

Shortly thereafter, another border patrol agent pulled over a dual wheeled dump truck loaded with 1,540 pounds of marijuana. The driver, Glenn Duggins, and his passenger, Justin Comer, were arrested. Prior to this arrest, the United States Customs Department had been investigating drug smuggling activity in southwest New Mexico, including the activities of this organization. From the arrest of Duggins and Comer, the Customs Department obtained additional

information indicating Carbajal-Moreno occupied a leadership role in the organization.

In February 2001, an eight count superseding indictment was returned against Carbajal-Moreno and five co-defendants.[1] Carbajal-Moreno was charged with engaging in a CCE, in violation of 21 U.S.C. § 848 (a) & (c) (Count 1); conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846 (Count 2); and six counts of possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) (Counts 3-8). A jury found Carbajal-Moreno guilty of all eight counts.[2] The district court sentenced him to 262 months on each count, all to run concurrently.

### Double Jeopardy

Carbajal-Moreno claims the district court committed plain error by failing to vacate his conspiracy conviction on Count 2 because it is a lesser included offense of his CCE conviction and thus a violation of the Fifth Amendment's Double Jeopardy provision. The Government confesses error.

A conspiracy to possess with intent to distribute marijuana (21 U.S.C. §

---

[1] His co-defendants were Glenn Eugene Duggins, Jose Armando Carbajal-Moreno, Rachel Alba-Contreras, Jose Angel Jurado-Chavez and Rosa Elena Carbajal-Alvarez.

[2] Carbajal-Moreno was the only defendant to stand trial. His co-defendants plead guilty pursuant to plea agreements.

846) is a lesser included offense of continuing criminal enterprise (21 U.S.C. § 848). *Rutledge v. United States*, 517 U.S. 292, 300, 307 (1996). Thus, the Double Jeopardy clause of the Fifth Amendment prohibits a defendant from being convicted for both crimes. *Id.* at 301-307. Accordingly, we remand this issue to the district court with instructions to vacate Carbajal-Moreno's conspiracy conviction on Count 2 and adjust his sentence accordingly.

**Sufficiency of the Evidence--Continuing Criminal Enterprise**

In challenging his CCE conviction, Carbajal-Moreno argues the Government must prove he organized, supervised, or managed five or more individuals during the commission of each predicate offense for which he was convicted. Under this view, he asserts the evidence was insufficient. Alternatively, he argues the evidence was insufficient to show he supervised, managed, or organized five or more individuals at any time during the CCE.

*I.*

Federal criminal law prohibits any person from engaging in a CCE. 21 U.S.C. § 848(a). Specifically:

[A] person is engaged in a continuing criminal enterprise if–

     (1) he violates any provision of [the federal drug laws] the punishment for which is a felony, and

     (2) such violation is a part of a continuing series of violations of [the federal drug laws]--

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c). Carbajal-Moreno argues § 848 requires proof he supervised, organized, or managed five or more persons during the commission of each of the predicate violations for which he was convicted. He recognizes this argument has been rejected by the Second Circuit. *Santana-Madera v. United States*, 260 F.3d 133, 140 n.3 (2d Cir. 2001) (interpreting *Richardson v. United States*, 526 U.S. 813 (1999)), *cert. denied*, 534 U.S. 1083 (2002). We cited *Santa-Madera* with approval in *United States v. Almaraz*, 306 F.3d 1031, 1037 (10th Cir. 2002), *cert. denied*, 537 U.S. 1241 (2003). Nonetheless, Carbajal-Moreno stands by his position, arguing the language of § 848 ("a continuing series of violations . . . which are undertaken by such person in concert with five or more other persons . . .") requires each violation involve his supervision of five or more persons.

The Supreme Court decisively telegraphed its intention on this issue. In *Richardson*, the Court directly held that in order to convict a defendant under § 848, the jury must unanimously agree about which specific predicate "violations make up the 'continuing series of violations.'" 526 U.S. at 815, 816 (citing 21

U.S.C. § 848(c)).  In reaching this holding, the Court responded to arguments made by the dissent and explained the narrow scope of its holding:

> The dissent, but not the Government, argues that the prosecution will now have to prove . . . that *five persons were involved with, the specific underlying crimes the jury unanimously agrees were committed. To the extent the dissent suggests that those other statutory requirements must be satisfied with respect to each underlying crime, it is clearly wrong.* Those requirements must be met with respect to the *series*, which, at a minimum, permits the jury to look at all of the agreed-upon violations in combination.

*Id.* at 823 (emphasis added).  In *Almaraz*, we recognized the limited unanimity requirement in *Richardson* and noted it has not been interpreted to require a finding that each predicate violation was undertaken in concert with five or more persons.  306 F.3d 1031, 1037, 1039 (citing *Santana-Madera*, 260 F.3d at 140 n.3).  The "five or more" proof relates to the series of violations.

## II.

Having determined the Government was not required to show Carbajal-Moreno supervised five or more individuals on each predicate act for which he was convicted, we still must address, under the framework iterated above, his alternative argument that there was insufficient evidence to show he supervised, organized, or managed five or more other persons while engaging in the CCE.

Sufficiency of the evidence to support a jury's verdict is a legal issue that is reviewed de novo.  *United States v. Lewis*, 240 F.3d 866, 870 (10th Cir. 2001) (citation omitted).  On appeal, we "ask only whether taking the evidence-both

direct and circumstantial, together with the reasonable inferences to be drawn therefrom-in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999) (quotations omitted).

A CCE conviction requires proof the defendant acted "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. § 848(c)(2)(A). Thus, the evidence is sufficient to support Carbajal-Moreno's CCE conviction if it shows he acted as an organizer, supervisor, or manager of five or more people. *Almaraz*, 306 F.3d at 1040 (citation omitted). The terms "organizer, supervisor, or manager" are given their everyday nontechnical meanings. *Id.* (citing *United States v. McSwain*, 197 F.3d 472, 478 (10th Cir. 1999)).

Carbajal-Moreno's relationships with the five or more persons "need not have existed at the same time or with each other, and the same type of relationship need not exist between the defendant and each of the five other persons involved." *Id.* (internal quotations omitted). Further, he need not have had personal contact with each of the five persons involved, nor must the directions or instructions to those being organized, supervised, or managed originate specifically with him. *United States v. Apodaca*, 843 F.2d 421, 426

(10th Cir.), *cert. denied*, 488 U.S. 932 (1988). "The mere delegation of managerial and supervisory duties will not defeat an individual's ultimate status as organizer, supervisor, or manager." *Id.* Further, Carbajal-Moreno need not be the only manager or even the dominant manager, supervisor, or organizer. *Almaraz*, 306 F.3d at 1040 (citation omitted). In fact a co-defendant can also be a co-manager and still be included as one of the five with whom the defendant holds a supervisory position. *Id.* With these standards in mind and upon a thorough review of the record, we conclude there was sufficient evidence at trial demonstrating Carbajal-Moreno managed or supervised five or more individuals, as described below.

### A. Greg and Dianne Hedgecock

Greg Hedgecock, also known as Jack Novi within the organization, died prior to trial. His wife, Dianne Hedgecock, testified at trial. She stated she and her husband transported marijuana for Carbajal-Moreno on a number of occasions. She testified Carbajal-Moreno would call her husband, she and her husband would go to a designated location,[3] pick up the marijuana, and deliver it to Stockton, California, where it would be unloaded. They would then be paid by Carbajal-Moreno or his brother Armando. Carbajal-Moreno provided the

---

[3]These designated locations varied from the side of the road, a national park, a stash house on Latigo Trail in southwest New Mexico, a place called "Rock Park", and another stash house in Tucson, Arizona.

Hedgecocks with money to purchase a Pace Arrow motor home to transport the marijuana. Carbajal-Moreno later purchased a larger motor home, a Vogue Five Coach, for the Hedgecocks for the same purpose.

Mrs. Hedgecock further testified that after she and her husband voiced their concerns about the security of the designated pickup areas, Carbajal-Moreno had them find a stash house. The Hedgecocks obtained such a house in a rural area on Latigo Trial in southwest New Mexico. Mrs. Hedgecock's name was placed on the lease/purchase agreement, and Carbajal-Moreno reimbursed the Hedgecocks for the lease/purchase of the house. He also paid to furnish it. When the location and identity of this stash house was exposed through information obtained by the arrests of Duggins and Comer, the Hedgecocks obtained another house (with Carbajal-Moreno's money) in Tucson, Arizona.

From Mrs. Hedgecock's testimony, as well as the testimony of United States Custom's Agent J.R. Long concerning the Hedgecocks' involvement with Carbajal-Moreno, sufficient evidence was presented at trial that would allow a reasonable jury to find beyond a reasonable doubt that Carbajal-Moreno managed, supervised, and organized both Dianne Hedgecock and Greg Hedgecock in the overall transportation of marijuana from southwestern New Mexico, and later Tucson, Arizona, to Stockton, California. Although the record indicates Greg Hedgecock may have played a much greater role than his wife in the organization,

there was nonetheless sufficient evidence to demonstrate she was also supervised and managed by Carbajal-Moreno.

### B.    Glenn Duggins

There was also sufficient evidence at trial showing Duggins transported marijuana for Carbajal-Moreno. First, Comer, the passenger of the dump truck driven by Duggins when they were arrested for transporting 1,540 pounds of marijuana, testified that Duggins had recruited him to go to southwestern New Mexico to help load and haul marijuana.[4] Prior to the arrest, he and Duggins, along with others, including Carbajal-Moreno, waited at the stash house on Latigo Trail in southwest New Mexico for word that they could go pick up a load of marijuana near the border and bring it back to the house so the Hedgecocks could transport it to Stockton, California. On the day of the arrest, Carbajal-Moreno and his girlfriend, Rachel Alba, led the way to "check out the area," followed by Comer and Duggins, where they loaded the marijuana into the dump truck. They were stopped and arrested on their way back to the stash house.

The evidence establishes that this was not the only time Duggins had loaded and transported marijuana for Carbajal-Moreno. Dianne Hedgecock

---

[4]Prior to being recruited to go to New Mexico to haul marijuana, Comer testified his friendship with Duggins had been rekindled when he traveled to Nevada to help Duggins who had broken down in a motor home. After helping Duggins fix the motor home, Comer traveled with Duggins in the motor home to Stockton, California, at which time Comer discovered the motor home was full of marijuana.

testified that on three occasions Duggins delivered marijuana to her and her husband's motor home in the Continental Divide National Park. Further, Veronica Morton, Duggins's former girlfriend, testified Duggins told her he transported drugs to different places and Carbajal-Moreno was his boss. Morton also indicated that on two separate occasions she traveled with Duggins to a "cabin," where Carbajal-Moreno and others were staying. She testified Duggins would leave the cabin in a dump truck, come back with marijuana, load the marijuana into a motor home and deliver it to Stockton, California, where he was paid by Armando, Carbajal-Moreno's brother. She stated this was done pursuant to Carbajal-Moreno's instructions.

Based upon this testimony, it is clear there was sufficient evidence for a jury to find beyond a reasonable doubt that Duggins's transportation of marijuana was managed and supervised by Carbajal-Moreno.

### C.   *Justin Comer*

As stated above, Comer testified at trial that Duggins recruited him to help haul and load marijuana, and he agreed to do it. Comer stated he traveled to the stash house at Latigo Trail where Carbajal-Moreno and others were and waited for word to pick up the marijuana. He admitted he then traveled with Duggins, following Carbajal-Moreno and his girlfriend, to a remote area of southwest New Mexico and loaded the marijuana into the dump truck. This testimony, as well as

other evidence in the record, indicates there was sufficient evidence for a reasonable jury to determine beyond a reasonable doubt that under the everyday nontechnical meaning of the terms organizer, supervisor, or manager that Carbajal-Moreno managed or supervised Comer. Carbajal-Moreno need not have been the only manager, nor need he have had personal contact with Comer. *Almaraz*, 306 F.3d at 1040; *Apodaca*, 843 F.2d at 426.

### D. *Julian Guillen*

Julian Guillen owned the car repair shop in Stockton, California, where the marijuana from New Mexico and Arizona was delivered and unloaded. Guillen testified Carbajal-Moreno gave him $6,000.00 or $7,000.00 to help open up this shop. Guillen further testified that on one occasion, marijuana was unloaded in his shop while he was present, but he did not help in the unloading and merely went into his office to avoid those unloading the marijuana.

Guillen testified he was aware Carbajal-Moreno was involved in drug dealing and he reluctantly agreed to purchase a home in his name for Carbajal-Moreno, using Carbajal-Moreno's money. Guillen testified he never lived in the home and did not pay for the home with his own money. Rather, Carbajal-Moreno lived in and paid for the home. Guillen knew the money Carbajal-Moreno gave him to purchase the home was drug money. Additionally, after Carbajal-Moreno was arrested, his brother, Armando, took a "rental agreement" to

Guillen. Guillen testified he did not receive any rent payments and he signed this fake "rental agreement" to cover up the fact that the house was really Carbajal-Moreno's. Judging this evidence in a light most favorable to the government, a reasonable jury could conclude beyond a reasonable doubt that Carbajal-Moreno supervised, managed, or organized Guillen.

### E. Others

Under § 848, the United States need only show Carbajal-Moreno supervised, managed, or organized five or more other individuals; those five individuals and their involvement have been demonstrated above. However, there was also sufficient evidence at trial for a reasonable jury to infer Carbajal-Moreno supervised, managed, or organized others, namely his brother Armando. In her testimony, Dianne Hedgecock stated that after she and her husband transported two loads of marijuana to Stockton, California, for Carbajal-Moreno, they were paid by Armando. Furthermore, Veronica Morton testified that on two separate occasions Armando paid Glenn Duggins for his work done for Carbajal-Moreno.

In addition to Armando, the record indicates that others, including Carbajal-Moreno's wife, Rosa, his girlfriend, Rachel Alba, Jose Angel Jurado-Chavez and an individual named Latto were also involved in various aspects of the organization supervised, managed, or organized by Carbajal-Moreno.

-14-

*Conclusion*

This case is **REMANDED** to the district court to vacate the conspiracy conviction on Count 2, and to adjust Carbajal-Moreno's sentence accordingly. We **AFFIRM** Carbajal-Moreno's conviction for engaging in a continuing criminal enterprise.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge