23-8088-cr
*United States v. Sterkaj*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2024

No. 23-8088-cr

UNITED STATES OF AMERICA,
*Appellee*,

v.

KLAUDIO STERKAJ,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Northern District of New York

ARGUED: JANUARY 15, 2025
DECIDED: MAY 23, 2025

Before: CABRANES, RAGGI, and NATHAN, *Circuit Judges*.

Defendant-Appellant Klaudio Sterkaj ("Sterkaj") appeals from the sentence component of a judgment of conviction entered in the United States District Court for the Northern District of New York (Frederick J. Scullin, *Judge*). Sterkaj contends that the District Court committed procedural error when it imposed an upward sentencing variance due to Sterkaj's refusal to cooperate with the Government.

The parties agree that the District Court increased Sterkaj's sentence for that very reason. Under *United States v. Stratton*, 820 F.2d 562 (2d Cir. 1987), and its progeny, district courts may not use a defendant's refusal to cooperate as a factor justifying an increase in the sentence imposed. As *Stratton* constitutes binding precedent and has not been rejected by the Supreme Court or reconsidered by our Court sitting en banc, we are presumptively bound to follow its holdings. Here, that requires finding that the District Court acted impermissibly when it increased Sterkaj's sentence because of his refusal to cooperate.

The Government argues that we are not bound by *Stratton* because of an exception to our general rule of fidelity to our precedent. The exception sets forth that we are not bound by a prior holding if an intervening Supreme Court decision casts doubt upon that holding. The Government identifies three Supreme Court decisions that it claims cast doubt upon *Stratton*. We disagree, and hold that *Stratton* remains binding precedent in our Circuit.

Accordingly, we **VACATE** the sentence component of defendant's judgment of conviction and **REMAND** the case to the

2

District Court for resentencing with the direction that defendant be resentenced by a different judge.

─────────

SARAH KUNSTLER, Law Offices of Sarah Kunstler, Brooklyn, NY, *for Defendant-Appellant*.

RAJIT S. DOSANJH, Assistant United States Attorney, *for* John A. Sarcone III, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee.*

─────────

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-Appellant Klaudio Sterkaj ("Sterkaj") appeals from the sentence component of a December 15, 2023 judgment of conviction entered in the United States District Court for the Northern District of New York (Frederick J. Scullin, *Judge*). Sterkaj contends that the District Court committed procedural error when it imposed an upward sentencing variance due to Sterkaj's refusal to cooperate with the Government.

The principal question presented here is whether our holding in *United States v. Stratton* remains good law.[1] If it does, the Government

---

[1] *United States v. Stratton*, 820 F.2d 562 (2d Cir. 1987).

agrees that the proper resolution of this case is remand to the District Court for resentencing. In *Stratton*, we held that a district court may not increase a defendant's sentence because of that defendant's refusal to cooperate.[2] We have dutifully restated and applied the rule from *Stratton* ever since.[3]

In the case before us, the sentencing judge lengthened the defendant's prison term because, among other things, he was dissatisfied with the defendant's proffer and his lack of cooperation in anticipation of sentencing.[4] The sentencing judge made it clear that, as a result of his assessment of the defendant's refusal to cooperate, he was imposing a sentence substantially higher than that recommended by the Government in its Sentencing Memorandum and by the United States Probation Office in its Pre-Sentence Report ("PSR").

This clear violation of the rule from *Stratton* is not disputed by the Government, which candidly informs us that, if our *Stratton*

---

[2] *Id.* at 564-65.

[3] *See, e.g., United States v. Rivera*, 201 F.3d 99, 101-102 (2d Cir. 1999); *United States v. Whitten*, 610 F.3d 168, 195 (2d Cir. 2010); *United States v. McKenzie*, No. 23-6144, 2024 WL 3594326, at *1-3 (2d Cir. July 31, 2024).

[4] A "proffer" session is one in which an individual—often a defendant, and often accompanied by an attorney—meets with representatives of the Government to share information with the Government and answer the Government's questions. The individual often does so in the hope of some benefit, such as dropped charges or the Government's recommendation of a lower sentence. *See generally* Michael J. Engle and Adam J. Petitt, *"Queen for a Day"—Assessing the Risks and Rewards of a Proffer Agreement*, Westlaw Journal White-Collar Crime, April 2017, at 1; Michael H. Graham, *Handbook of Federal Evidence* § 410:1 n.2 (9th ed. 2024).

decision retains its vitality, we would be required to remand the case to the District Court for resentencing.[5]

In ordinary circumstances, a panel of our Court is not free to ignore our precedents unless those precedents have been rejected by a subsequent Supreme Court decision or subjected to en banc reconsideration by our Court. However, in the limited circumstances where an intervening Supreme Court decision "casts doubt" on a prior ruling, breaking "the link on which we premised our prior decision, or undermin[ing] an assumption of that decision," we are not bound by our precedent.[6] Accordingly, it is the Government's position that we may affirm the sentence imposed by the District Court in this case— despite the fact that it lies in clear conflict with our precedents— because the Supreme Court's rulings in *Salinas v. Texas* (2013), *Pepper v. United States* (2011), and *Concepcion v. United States* (2022), all of which were decided after *Stratton*, have cast doubt on the *Stratton* rule.[7]

We disagree. None of the intervening cases advanced by the Government disrupt the logic or upset the assumptions of our *Stratton*

---

[5] *See* Appellee's Br. at 15 ("Assuming, however, that the Court continues to apply its precedent, the government concedes that the district court erred by varying upwards from the guidelines range on the basis of [Sterkaj's] refusal to cooperate, necessitating a remand for resentencing.").

[6] *See Dale v. Barr*, 967 F.3d 133, 142 (2d Cir. 2020).

[7] *Salinas v. Texas*, 570 U.S. 178 (2013); *Pepper v. United States*, 562 U.S. 476 (2011); *Concepcion v. United States*, 597 U.S. 481 (2022).

5

decision enough to warrant deviating from its rule. Thus, we hold that *Stratton* remains binding precedent in our Circuit.

We agree with the Government that strictly following *Stratton* would require us to vacate the sentence component of Sterkaj's judgment of conviction and to remand the case to the District Court for resentencing. Additionally, while we entertain no lack of confidence in the experienced district judge who presided over this case, we think that the appearance of justice requires that, on remand, the case be assigned for resentencing by a different judge.

Accordingly, we **VACATE** the sentence component of the judgment of conviction and **REMAND** the case to the District Court for resentencing with the direction that Sterkaj be resentenced by a different judge.

## I. BACKGROUND

On July 11, 2022, a criminal complaint was filed against Sterkaj.[8] The factual predicate for the criminal complaint involved a vehicle and traffic stop performed by the New York State Police. Sterkaj had been driving a car with two Albanian citizens who both admitted they had entered the United States illegally from Canada. Sterkaj was charged

---

[8] A 11-13.

with transporting aliens within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).[9]

On March 30, 2023, Sterkaj waived indictment and pleaded guilty, pursuant to a plea agreement, to a one-count information charging him with transporting an alien within the United States.[10]

In its Sentencing Memorandum of July 7, 2023, the Government recommended that the District Court sentence Sterkaj to a within-Guidelines sentence of 6 to 12 months' imprisonment.[11] Following the enactment of new amendments to the Guidelines, which took effect November 1, 2023, the United States Probation Officer calculated an even lower Guidelines sentencing range of 0 to 6 months' imprisonment in the Final Presentence Report ("PSR") dated November 15, 2023.[12]

Sentencing took place on December 15, 2023. The District Court adopted the PSR's findings, including the proposed Guidelines range of 0 to 6 months imprisonment. Before imposing a sentence, the District Court addressed the parties, stating "[m]y request is you

---

[9] 8 U.S.C. § 1324(a)(1)(A)(ii) provides in relevant part that any person who "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise" shall be punished as provided in subparagraph (B) of the statute.

[10] A 18-35.

[11] A 248.

[12] PSR ¶ 44.

spend some time talking to the defendant and the defendant spends some time talking to the government about what happened here."[13] The District Court went on to say that, in light of Sterkaj's failure to cooperate with the Government in the way the District Court desired, "the Court has to consider that you have not shown remorse for your conduct and certainly are not willing to cooperate to explain what happened."[14] On that ground, the District Court announced that it would vary upward from the Guidelines range to impose a sentence of 24 months' imprisonment, telling Sterkaj "you're lucky you're only facing two years" and that "[i]t could have been up to ten years."[15] Sterkaj's then-counsel "lodge[d] an objection to the sentence as outside the guidelines" and additionally expressed his intention "to make sure that I'm not inadvertently waiving something," preserving the argument for appellate purposes.[16]

Sterkaj timely filed the instant appeal on December 21, 2023.

## II. DISCUSSION

### A. Under Second Circuit Precedent—Which Has Not Been Undermined by Intervening Supreme Court Decisions—the District Court's Sentence Was Procedurally Unreasonable.

---

[13] A 260.

[14] A 261.

[15] A 263.

[16] A 263-64.

We review a sentence imposed by the district court under a "deferential abuse-of-discretion standard."[17] A district court has abused its discretion "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions."[18]

We held in *Stratton* that "increasing the severity of a sentence for a defendant's failure to cooperate" is an "impermissibl[e] enhance[ment]," warranting vacatur, and that "[i]t is improper to increase a defendant's sentence due to his silence regardless of his motivations."[19]

Sterkaj contends that the District Court's decision to increase the severity of his sentence due to his refusal to cooperate with the Government is impossible to reconcile with our precedents and was procedurally unreasonable because it rested on an impermissible factor.[20] It is uncontested that the District Court increased Sterkaj's

---

[17] *United States v. Pope*, 554 F.3d 240, 244 (2d Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)).

[18] *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (quotation marks and citations omitted).

[19] *Stratton*, 820 F.2d at 564-65.

[20] *See* Defendant-Appellant's Br. at 12, 19-22.

Sterkaj contends that the decision to increase the severity of his sentence due to his refusal to cooperate also constitutes procedural error under U.S.S.G. § 5K1.2. *Id.* at 16-18 (arguing that since section 5K1.2 provides that "[a] defendant's

sentence because, in the District Court's view, he had refused to cooperate. Indeed, the Government acknowledges in its brief that "the record establishes that the district court increased Sterkaj's prison term due to his refusal to cooperate with the government," which, under our *Stratton* line of precedent, means "that the district court erred" and "necessitat[es] a remand for resentencing."[21]

The Government is right to concede this point. The District Court, at sentencing, justified its upward variance by explaining that Sterkaj "certainly [was] not willing to cooperate to explain what happened."[22] Accordingly, the District Court's sentence violated the clear holding of *Stratton*.

Typically, our analysis would end here. *Stratton* constitutes binding precedent in our Circuit. Therefore, we must follow its teachings "unless and until [it] is reconsidered by our court sitting in banc (or its equivalent) or is rejected by a later Supreme Court

---

refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentence factor," it was improper for the District Court to increase Sterkaj's sentence based solely on his failure to cooperate). Because we conclude that there was sufficient procedural error to warrant reversal on other grounds, we do not reach this argument.

For a similar reason, we do not reach Sterkaj's contention that the District Court failed to adequately explain its chosen sentence. *See id.* at 22-24.

[21] Appellee's Br. at 14-15.

[22] A 261.

10

decision."[23] As neither of these eventualities has occurred, we are bound to follow *Stratton*'s dictates.

The Government, however, seeks to invoke an exception to our general rule. It argues that our *Stratton* line of cases "is not consistent with the Supreme Court's precedent" and that "intervening Supreme Court decisions provide grounds for not continuing to apply" the *Stratton* rule.[24] We are not bound to follow a prior ruling in our Circuit when "an intervening Supreme Court decision casts doubt on the prior ruling—that is, where the Supreme Court's conclusion in a particular case . . . broke the link on which we premised our prior decision, or undermined an assumption of that decision."[25] That said, this exception is not to be construed liberally, and we only "resort to [it] cautiously, because '[a] less-than-stringent application of the standards for overruling prior decisions not only calls into question a panel's respect for its predecessors but also increases uncertainty in the law by revisiting precedent without cause.'"[26] Accordingly, mere "tension" between a Second Circuit opinion and a subsequent Supreme Court opinion does not suffice to trigger this exception.[27]

---

[23] *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003).

[24] Appellee's Br. at 14-15.

[25] *United States v. Peguero*, 34 F.4th 143, 158 (2d Cir. 2022) (quotation marks and alteration omitted).

[26] *Dale*, 967 F.3d at 143 (quoting *Doscher v. Sea Port Group Securities, LLC*, 832 F.3d 372, 378 (2d Cir. 2016)).

[27] *Monsanto*, 348 F.3d at 350-51.

With these concepts in mind, we must assess whether any of the Supreme Court case law presented by the Government qualifies as an intervening decision that rises to the level of casting doubt on our ruling in *Stratton* in a manner that warrants application of the exception.

The Government points to three cases to support its argument: *Salinas v. Texas*, *Pepper v. United States*, and *Concepcion v. United States*.[28] We address each case in turn.

The first case, *Salinas v. Texas*, clearly does not cast doubt on the *Stratton* line of cases. *Salinas* holds that individuals cannot "rely on the [Fifth Amendment] privilege against self-incrimination" unless they expressly "invoke [that privilege]."[29] The Government asserts that *Salinas* therefore undermines *Stratton*'s reasoning that it is "unimportant that [the defendant] did not raise his Fifth Amendment claim in the district court."[30]

But the Government is mistaken to treat *Stratton* as dependent on the Fifth Amendment privilege against self-incrimination. Indeed,

---

[28] *Salinas v. Texas*, 570 U.S. 178 (2013); *Pepper v. United States*, 562 U.S. 476 (2011); *Concepcion v. United States*, 597 U.S. 481 (2022).

The Government also contends that *Stratton* is inconsistent with an earlier Supreme Court case: *Roberts v. United States*, 445 U.S. 552 (1980). *Roberts* was decided before our ruling in *Stratton*. Therefore, it is not an "intervening" case and cannot trigger the exception to our duty to follow our binding precedent.

[29] *Salinas*, 570 U.S. at 191.

[30] *Stratton*, 820 F.2d at 564; Appellee's Br. at 32.

in *Stratton* we noted that our "rule on improper sentence enhancement for refusal to cooperate" was "not limited to the Fifth Amendment context."[31] Thus, any evolution in doctrine regarding that privilege in *Salinas* cannot be said to have broken the logical link underlying *Stratton*.

*Pepper v. United States* is similarly inapposite. The Supreme Court held in *Pepper* that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range."[32] But the case before us concerns sentencing in the first instance, not resentencing as in *Pepper*. What is more, it contemplates an upward variance rather than a downward variance, and we have repeatedly held that "[i]t is one thing to extend leniency to a defendant who is willing to cooperate with the government; it is quite another thing to administer additional punishment to a defendant who by his silence has committed no additional offense."[33]

Even if *Pepper*'s procedural posture and holding were analogous—and again, they are not—nothing else in that decision casts doubt on *Stratton*. The Government, arguing otherwise,

---

[31] *Stratton*, 820 F.2d at 564.

[32] *Pepper*, 562 U.S. at 481.

[33] *Stratton*, 820 F.2d at 564 (quoting *United States v. Bradford*, 645 F.2d 115, 117 (2d Cir. 1981)).

13

primarily points to language in *Pepper* suggesting that "sentencing courts" should be permitted to "consider the widest possible breadth of information about a defendant."[34] But this is not some novel proposition espoused for the first time in *Pepper*. Rather, it derives from what the Government acknowledges is an "established principle"[35] codified in 18 U.S.C. § 3661.[36] As a mere restatement of law that was settled more than fifteen years before *Stratton* was decided, the language that the Government relies on in *Pepper* cannot qualify as an intervening decision that casts doubt on *Stratton*.

The last case that the Government calls to our attention is *Concepcion v. United States*. *Concepcion* is inapposite for reasons similar to *Pepper* insofar as it concerns a matter of resentencing rather than sentencing in the first instance.[37]

---

[34] *Pepper*, 562 U.S. at 488.

[35] Appellee's Br. at 33.

[36] 18 U.S.C. § 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This language was in fact first codified in 1970 in 18 U.S.C. § 3577; Congress later "recodified § 3577 without change at § 3661." *See Pepper*, 562 U.S. at 488-89.

[37] *Concepcion*, 597 U.S. at 486 ("The question in this case is whether a district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion.").

Even if we were to reach the substance of *Concepcion*, however, it would not alter our conclusion. The Government places great weight on the assertion by the *Concepcion* Court that "[t]he only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution."[38] But this, too, is no more than a restatement of a settled principle of law and is at most coextensive with the language of 18 U.S.C. § 3661. As with *Pepper*, because 18 U.S.C. § 3661 predated our *Stratton* decision, the two are presumed to be consistent, and nothing in *Concepcion* clearly breaks a logical link upon which *Stratton* depended.

The Government's reading of *Concepcion* isolates a single line from that opinion and construes it as a novel grant of unfettered authority to sentencing judges. But *Concepcion* simply reaffirms the "longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her 'as an individual.'"[39]

To be sure, to facilitate this assessment, "a federal judge in deciding to impose a sentence 'may appropriately conduct an inquiry

---

The First Step Act, which "authorizes district courts to reduce the prison sentences of defendants convicted of certain offenses involving crack cocaine," contemplates the resentencing of individuals who have already received an initial sentence. *Id.*

[38] *Id.* at 494 (citing *Pepper*, 562 U.S. at 489 n.8).

[39] *Id.* at 486 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

15

broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'"[40] And the Supreme Court has stated that the "wide discretion in the sources and types of evidence"[41] sentencing judges are permitted to consider is "necessary [so] that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to [] trial."[42] But of course, the simple fact that information may be accessed does not imply an unbounded authority to impose sentences on improper procedural bases using that information.[43]

---

[40] *Id.* at 492 (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)).

[41] *Id.* (quoting *Williams v. New York*, 337 U.S. 241, 246 (1949)).

[42] *Williams*, 337 U.S. at 247.

[43] The Government is quite right to note that limitations on the sentencing judge's discretion to consider relevant information must be grounded in the Constitution or in statute. But the question of *which* Constitutional or statutory touchstone grounds *Stratton* within the holding of *Concepcion* is not before us. That said, we note in passing that at least one appears to exist: the Fifth Amendment's due process guarantee. Procedural due process is plausibly derogated when a judge fills in the space left by a defendant's silence with adverse presumptions. As we have previously stated, "[i]t is one thing to extend leniency to a defendant who is willing to cooperate with the government; it is quite another thing to administer additional punishment to a defendant who by his silence has committed no additional offense." *United States v. Bradford*, 645 F.2d 115, 117 (2d Cir. 1981) (quoting *United States v. Ramos*, 572 F.2d 360, 363 n.2 (2d Cir. 1978)). While "the distinction is somewhat illusory," we have determined that "it is the only rule that recognizes the reality of the criminal justice system while protecting the integrity of that system." *Mallette v. Scully*, 752 F.2d 26, 30 (2d Cir. 1984); *see also Roberts*, 445 U.S. at 563 (Brennan, J., concurring) ("[T]he problem of drawing inferences from an

Connecting the foregoing to the instant appeal, the District Court in this case was unquestionably permitted to hear evidence of Sterkaj's cooperation or lack thereof. It was not permitted, however, to infer a lack of remorse, warranting an upward variance, from the ambiguous silence of Sterkaj's unexplained lack of cooperation. This conclusion follows inexorably from our holding in *Stratton*—a holding that has not been clearly undermined by the Supreme Court's decision in *Concepcion*.

Thus, we decline the Government's invitation to invoke our exception to following binding precedent. As the exception is one that we resort to only "cautiously," and as none of the cases raised by the Government cast any doubt on our ruling in *Stratton*, for us to decide otherwise would both improperly "call[] into question [our] respect for [our] predecessors" and "increase[] uncertainty in the law by revisiting precedent without cause."[44] Therefore, we conclude that *Stratton* remains good law, and hold that the District Court's decision to increase Sterkaj's sentence on the basis of his refusal to cooperate was procedurally unreasonable.[45]

---

ambiguous silence is troubling. As a matter of due process, an offender may not be sentenced on the basis of mistaken facts or unfounded assumptions.").

[44] *Dale*, 967 F.3d at 143 (quoting *Doscher*, 832 F.3d at 378).

[45] Sterkaj also contends that the sentence was substantively unreasonable. Defendant-Appellant's Br. at 24-26. Since we hold that the sentence contains procedural error, we do not reach that issue.

17

## B. We Remand the Case to Another Judge in Order to Preserve the Appearance of Justice.[46]

In *Stratton*, after we held that the defendant's sentence was impermissibly enhanced due to his silence, we vacated the sentence and remanded for resentencing by a different judge.[47] While we did not articulate a reason for remanding to a different judge in that decision, we have previously held that "when circumstances might reasonably cause an objective observer to question the judge's impartiality, the Court has the power to remand the case to a different judge."[48] In *Stratton*, the circumstances that sufficed to merit remand to a different judge appeared to consist solely of the sentencing judge's decision to increase the defendant's sentence because of his refusal to cooperate with the Government.

If reassigning the case to a different judge was the appropriate course of action in *Stratton*, then it is surely the correct outcome here, too. As in *Stratton*, the judge indisputably imposed a longer sentence because of a defendant's failure to cooperate with the Government.

---

[46] The Government contends that we should not reach the question of reassignment because "Sterkaj makes no affirmative argument in favor of reassignment" in his opening brief. Appellee's Br. at 38. But Sterkaj does make just such an argument in his reply brief. *See* Reply Br. at 15-16. In any event, we have found that "there is no barrier to our reassigning [] cases *nostra sponte*." *Ligon v. City of New York*, 736 F.3d 118, 129 (2d Cir. 2013), *vacated in part*, 743 F.3d 362 (2d Cir. 2014). Thus, the Government's threshold argument to prevent this inquiry fails.

[47] *Stratton*, 820 F.2d at 565.

[48] *United States v. Trimm*, 999 F.3d 119, 129 (2d Cir. 2021) (quotation marks omitted and alteration adopted).

18

Indeed, even after sentencing Sterkaj to a prison term of 24 months, the judge made comments that could be interpreted as suggesting that he continued to seek Sterkaj's cooperation with the Government.[49]

Our decision to remand for resentencing by a different judge does not reflect any lack of confidence in the ability of the sentencing judge to conduct an appropriate resentencing. We have no doubt on that count and are certain that the District Court's resentencing would have comported with our order. But we cannot ignore the appearance-of-justice concerns before us here.

### III. CONCLUSION

To summarize, we hold as follows:

(1) The *Stratton* line of cases remains binding law in the Second Circuit;

(2) The District Court's decision to increase Sterkaj's sentence due to his refusal to cooperate with the Government was procedurally unreasonable; and

(3) In the circumstances presented here, concerns for the appearance of justice require us to remand this matter for resentencing by a different judge.

---

[49] The sentencing judge told Sterkaj "it's up to you what you're going to do now" and that he could "help [him]self or . . . hurt [him]self." A 263:11-12.

For the foregoing reasons, we **VACATE** the sentence component of the judgment of conviction and **REMAND** the case to the District Court for resentencing with the direction that defendant be resentenced by a different judge.